In the

# United States Court of Appeals
### For the Seventh Circuit

No. 01-2995

BRENT KAMLER,

*Plaintiff-Appellant,*

*v.*

H/N TELECOMMUNICATION SERVICES, INC., et al.,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 00-C-4024—**Suzanne B. Conlon**, *Judge.*

ARGUED APRIL 16, 2002—DECIDED SEPTEMBER 16, 2002

Before CUDAHY, COFFEY and WILLIAMS, *Circuit Judges.*

CUDAHY, *Circuit Judge.* In this appeal, Brent Kamler challenges a grant of summary judgment entered against him on his ERISA-related claims against H/N Telecommunication Services, Inc., formerly known as PAL Telecom Group, Inc. (PAL), PAL Telecom Group, Inc. Employee Welfare Plan (PAL Plan) and Royal & SunAlliance (Royal). This case presents a tangled factual scenario which we will try to untangle as best as we can.

## I.

The relationship between Kamler and PAL arose when PAL decided to hire three managers for a construction

project in Brazil. George Lamplota, PAL's director of project management, telephoned Kamler for an initial telephone interview. During this interview, Kamler asked Lamplota for an annual salary of $95,000, full medical benefits plus per diem expenses. Kamler, who resides in California, demanded health insurance before he would go to Brazil. Lamplota allegedly responded that Kamler would be insured. Lamplota offered Kamler medical benefits under the PAL Plan, but there is a factual dispute about whether Kamler stated that he did not want PAL's health insurance if he had to pay premiums. *See Kamler v. H/N Telecommunication Serv., Inc.*, No. 00-C-4024, 2001 WL 740516, *1 (N.D. Ill. June 29, 2001).

On March 17, Kamler signed a letter of commitment memorializing the agreement with respect to his compensation package, but this letter is silent about health insurance coverage. Two days later, Kamler left for Brazil. A short time later, Lamplota obtained a personnel manual and an enrollment form for the PAL Plan for Kamler, which was to be faxed via PAL's office in Sao Paolo, Brazil. The personnel manual's section on insurance states "medical, life and long-term disability insurance are carried by the firm on a group basis for the benefit of its employees." *Kamler*, 2001 WL 745016, at *2.

The PAL Plan was an employee welfare benefit plan established by PAL for eligible employees through participation in a group medical, life and disability insurance program. The PAL Plan is governed by the Employee Retirement Income Security Act (ERISA). The PAL Plan was underwritten by Trustmark Insurance Company and administered by Star Marketing & Administration, Inc. (Starmark). *Kamler*, 2001 WL 745016, at *3. The Plan provided that all eligible employees must apply for coverage by filling out an enrollment form. *Id.* If an employee applied before working 30 continuous days, his effective date occurred at the end of the 30-day period, and if he

applied after this date, the effective date was the first day of the month following the date he applied. *Id.* This 30-day period could be waived by a request submitted with the enrollment form. *Id.* The enrollment form provided in part:

> To be completed by the employees only. Failure to provide complete facts may be cause for cancellation of your coverage as of its effective date.
>
> NOTE: As part of our routine underwriting procedure, you may receive a phone call . . . to obtain personal information needed to evaluate your insurability . . . . Unless waived above, I request insurance under my employer's insurance plan . . . . I authorize my employer to make deductions from my earnings for my share of the cost, if any, for the benefits for which I may become entitled.

*Kamler*, 2001 WL 745016, at *4. The PAL Plan also provided that, after an employee filled out an enrollment form and was accepted by Trustmark (the insurance company providing coverage), the employee would receive a certificate of insurance.

On March 30, Lamplota faxed the personnel manual and enrollment form to Victor Jaworski in PAL's Brazil office with the following cover memorandum:

> Victor: Enclosed please find [PAL's] . . . Personnel Manual and the Employee Enrollment Form (Insurance) to be forwarded to Brent Kamler . . . . [He] should fill out the Employee Enrollment Form and return it back to me as soon as possible, the coverage is to start by 05-01-1998.

*Kamler*, 2001 WL 745016, at *3. Jaworski did not recall receiving this fax before May 1998.

On May 5, Lamplota resent the March 30th memorandum with the attachments to Jaworski. *Id.* On May 6, Jim Oliva faxed this information to Kamler's hotel in Brazil,

with a cover note that read: "Hi Brent: I was asked by Victor [Jaworski] to follow up on George Lamplota's fax. Please fill out the requested forms and fax back to Sao Paulo office." *Id.* Oliva then followed up with a phone call to Kamler.

After Kamler received the enrollment form, he promptly called Lamplota with questions about it. This was the first time since his initial telephone interview in mid-March 1998 that Kamler had discussed health insurance coverage with Lamplota. *Id.* Kamler told Lamplota that he was concerned that the enrollment form required him to provide information that he felt violated his right of privacy. Kamler asked Lamplota for verification of exactly what information the insurance company wanted, and why. Lamplota told Kamler that he would contact the insurance company and call Kamler back. Lamplota did not tell Kamler that Kamler would not receive coverage without filling out and submitting the form. Lamplota also did not advise Kamler to contact Starmark or anyone else for answers to his questions. Lamplota allegedly did not call Kamler back with answers to his inquiries, and Kamler never completed the enrollment process.

On June 3, 1998, Lamplota telephoned Kamler to terminate him because Kamler had completed his assignment early and there was no further work to do. Kamler returned to the United States. Two weeks later, Kamler had a heart attack and was admitted to a hospital for treatment. On his hospital bill, the name of his insurance carrier is blank because he was never able to provide the hospital with the information. *Id.*

On August 4, 1998, Kamler submitted a claim to PAL (but not to the PAL Plan) for payment of the medical expenses arising from his heart attack. This claim was subsequently submitted, either by Kamler or PAL, to Royal (PAL's liability insurance carrier). Neither PAL nor the PAL Plan has ever paid Kamler's medical expenses.

In October 1999, CH2M HILL Telecommunications Group, LLP ("Hill"), and PAL transitionally merged, and in October 2000, Hill purchased PAL's assets. *Kamler*, 2001 WL 745016, at *5. On December 31, 1999, the PAL Plan was terminated. *Id.* The former PAL employees were covered under a new group plan that used a different insurance carrier than the PAL Plan did. *Id.*

On March 6, 2000, Lamplota received a letter from Kamler's attorney requesting the PAL Plan insurance documents. *Id.* The letter was referred by Lamplota to Nestor Popowych, the president of PAL, and eventually to legal counsel. It was then passed on to Royal. On November 24, Royal denied Kamler's claim for payment of his hospital bill based upon the results of its investigation. Kamler never contacted Starmark, and no one requested information regarding the PAL Plan or submitted a claim for benefits to Starmark.

On March 20, 2001, Kamler filed his second amended complaint against PAL, the PAL Plan, Royal and Starmark. The defendants moved for summary judgment. The district court granted the motion. The district court held that Kamler did not have standing to bring a claim for medical benefits because Kamler was not a participant in the PAL Plan. In connection with the issue of standing, the district court held that Kamler did not have a colorable claim for medical benefits because alleged misrepresentations on the part of an employer's agents are insufficient to provide standing. Alternatively, Kamler did not have standing because he failed to satisfy his duties of self help and due diligence by neglecting to file his enrollment papers with Starmark. The district court also denied the claim for statutory penalties against PAL and Royal for failure to respond to a request for information. It concluded that Kamler should have made his request for information to Starmark, rather than to PAL or Royal. Moreover, the information requested was outdated since the PAL Plan had been terminated over

a year and half earlier, and the request was made very late. Subsequently, the claims against Starmark were dismissed by stipulation of settlement. Kamler appeals from the judgment of the district court on the remaining claims against PAL, the PAL Plan and Royal.

## II.

This court has jurisdiction under 28 U.S.C. § 1291. We review the grant of a motion for summary judgment de novo, drawing all reasonable inferences in favor of the non-movant. *Neuma, Inc. v. AMP, Inc.*, 259 F.3d 864, 871 (7th Cir. 2001). We will affirm a grant of summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Neuma*, 259 F.3d at 871. *Cf. Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 114 (1989) (holding that generally, "a denial of benefits challenged under § 1132(a)(1)(B) [of ERISA] is to be reviewed . . . de novo"). We review a district court decision to impose or not to impose statutory penalties for an abuse of discretion. 29 U.S.C. § 1132(c)(1); *see also Neuma*, 259 F.3d at 879.

## A.

Kamler seeks to recover his medical expenses from PAL and the PAL Plan under 29 U.S.C. § 1132(a)(1)(B).[1] Because

---

[1]  29 U.S.C. § 1132 provides:

> (a) Persons empowered to bring a civil action. A civil action may be brought—

> (1) by a participant or beneficiary—

(continued...)

the PAL Plan is governed by ERISA, Kamler must first establish that he has standing to bring these claims. Under ERISA, only participants can bring a claim against a plan for benefits. *See Firestone*, 489 U.S. at 116. A participant is a "former employee . . . who is or may become eligible to receive a benefit of any type from an employee benefit plan." 29 U.S.C. § 1002(7). Further, persons who have "a reasonable expectation of returning to covered employment" or who have a "colorable claim to vested benefits" also have standing to bring ERISA claims. *Firestone*, 489 U.S. at 117 (internal quotations omitted). Because Kamler is neither currently employed by PAL nor expected to be employed by PAL, he is a participant only if he has a "colorable claim to vested benefits." We have held that the requirements for a colorable claim are not stringent; a plaintiff need have only a nonfrivolous claim for the benefit in question. *Panaras v. Liquid Carbonic Indus. Corp.*, 74 F.3d 786, 790 (7th Cir. 1996).

Kamler argues that he has a colorable claim for benefits—and thus standing—under the alternative theories of estoppel and breach of fiduciary duty. We have previously noted that "ERISA's standing requirements put this court in the rather unusual position of having to adjudicate the merits of the case at a fairly preliminary stage of the proceedings." *Sallee v. Rexnord Corp.*, 985 F.2d 927, 930 (7th Cir. 1993). Based upon our analysis of Kamler's alternative theories for standing, *see infra*, we are inclined to disagree with the district court and hold that Kamler

---

[1] (...continued)

   . . .

> (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the plan, or to clarify his rights to future benefits under the terms of the plan.

has standing because he has stated nonfrivolous claims for benefits.[2]

**B.**

First, Kamler argues that he is entitled to medical benefits under the PAL Plan because, except for the misrepresentations by PAL, the PAL Plan or their agents, he would have enrolled in the PAL Plan. Kamler's argument is based on several species of estoppel.

The first is an equitable estoppel theory. Kamler argues that the defendants represented to him that he was already insured. For example, Lamplota, during the March 1998 phone interview, allegedly assured Kamler that Kamler would receive health insurance. The cover letter of the memo faxed by Lamplota to Jaworski in May 1998, and faxed on to Kamler, also allegedly represented that Kamler had health insurance beginning in May 1998. Finally, the personnel manual, faxed with the memorandum, allegedly represented that Kamler was already insured when it stated that "medical, life and long-term disability insurance are carried by the firm on a group basis for the benefit of its employees." Thus, Kamler argues that, if it had not been for these misrepresenta-

---

[2] We note that the district court's reliance on *Loechl v. Illinois Bell Telephone Co.*, 648 F. Supp. 1178 (N.D. Ill 1986) and *Freeman v. Jacques Orthopaedic & Joint Implant Surgery Med. Group*, 721 F.2d 654 (9th Cir. 1983), is misplaced in light of cases such as *Bowerman v. Wal-Mart Stores, Inc.*, 226 F.3d 574 (7th Cir. 2000), which permitted a plaintiff, who stated a claim based upon misrepresentation, to prevail on an ERISA claim. *Loechl* and *Freeman* were decided before *Firestone*, which this court has interpreted to extend standing to any plaintiff with a colorable claim for benefits. *See Panaras*, 74 F.3d at 786.

tions that he was already insured, he would have filled out an enrollment form.

Alternatively, Kamler argues that the defendants prevented him from enrolling and thus they should be estopped from denying him benefits that he would have received if he had enrolled. Besides representing to him that he was already insured (and thus implying that he did not need to enroll), Kamler argues that Lamplota's failure to call him back to answer his privacy concerns was a misrepresentation that resulted in Kamler's failure to complete the enrollment process. Finally, Kamler makes a promissory estoppel claim. He argues that PAL, through its agent Lamplota, promised him medical benefits and that he relied on this promise when he accepted employment and left for Brazil.

"It is not easy to apply estoppel principles to ERISA cases in the face of the rule requiring modifications to plans to be in writing, 29 U.S.C. § 1102(a)(1), and the required procedures for amending plans, 29 U.S.C. § 1102(b)(3)." *Coker v. Trans World Airlines*, 165 F.3d 579, 585 (7th Cir. 1999). This court has, however, permitted plaintiffs to raise estoppel-based causes of action under ERISA. *See*, *e.g.*, *Bowerman v. Wal-Mart Stores, Inc.*, 226 F.3d 574 (7th Cir. 2000) (holding that a plan administrator was estopped from denying medical coverage where the plan documents were ambiguous and someone with apparent authority to interpret the plan made oral misrepresentations). In attempting to clarify some confusion about estoppel, we held in *Coker* that the elements of ERISA-estoppel are: (1) a knowing misrepresentation by the defendant; (2) in writing; (3) with reasonable reliance by the plaintiff on the misrepresentation; (4) to the plaintiff's detriment. *Coker*, 165 F.3d at 585. As defined, ERISA-estoppel can encompass both the concept of promissory estoppel and the concept of equitable estoppel. *See id.* (noting that the

proposed four-factor test for ERISA-estoppel encompassed "what has been implicit in all of our estoppel cases"). Finally, in *Bowerman*, we clarified that "oral representations of an ERISA plan may not be relied upon . . . when the representation is contrary to the written terms of the plan and those terms are set forth clearly." *Bowerman*, 226 F.3d at 588. Therefore, all of Kamler's claims based on estoppel principles will be analyzed under the *Coker* four-factor test.

Under the *Coker* test for ERISA-estoppel, Kamler faces several problems with his estoppel theories. The principal problem is that there is no allegation of knowing misrepresentations. Kamler does not allege that he was told by anyone that he did not have to enroll in the PAL Plan to receive medical benefits. Rather, at least one document sent to Kamler, the fax from Oliva, asked him to "fill out the requested forms." A promise to provide insurance is not a promise that Kamler would receive insurance even if he did not enroll. Similarly, a promise to answer privacy concerns is not a promise that Kamler could wait indefinitely to complete the enrollment process. At best, the alleged misrepresentations might *imply* that Kamler did not have to enroll, but, as discussed *infra*, it was not reasonable for him to interpret the alleged misrepresentations in that manner.

Kamler also cannot show that it was reasonable for him to rely upon the alleged misrepresentations to justify his failure to enroll. In his deposition, Kamler admits that he has never received disability or life insurance through a previous employer without filling out a form. Further, he testified that he never received an insurance card or certificate of insurance from PAL, the PAL Plan or Starmark, the plan administrator. Kamler also did not know the name of the insurer, the terms of coverage, the deductibles, the exclusions or the period of time the policy covered. Finally, it was unreasonable for Kamler to in-

terpret the alleged misrepresentations as excusing him from enrolling in the Plan because the PAL Plan documents unambiguously and clearly require enrollment as a precondition for coverage.

In interpreting an ERISA plan, we apply the federal common law rules of contract interpretation. *Neuma, Inc. v. AMP, Inc.*, 259 F.3d 864, 873 (7th Cir. 2001). These rules "require us to interpret terms of ERISA plans in an ordinary and popular sense as would a person of average intelligence and experience." *Swaback v. Am. Info. Techs. Corp.*, 103 F.3d 535, 540-41 (7th Cir. 1996). In attempting to interpret an ERISA plan, "our first task is to determine if the [documents governing the ERISA plan] at issue [are] ambiguous or unambiguous." *Neuma*, 259 F.3d at 873. "[I]f a document governing an ERISA plan is unambiguous, this court will not look beyond its 'four corners' in interpreting its meaning." *Id.*

After reviewing the PAL Plan documents, we believe that the documents clearly and unambiguously require an employee to enroll before the employee becomes eligible for medical benefits. The cover page of the policy issued by Trustmark, which governs the PAL Plan, states that: Trustmark "insures those Eligible Persons . . . whose *applications* have been approved by the [insurance] Company and for whom the premium has been paid." Appellant's Separate Appendix (S.App.) 173 (emphasis added). Section D of the policy states: "*Eligible Employees must apply for coverage* . . . . All applications must be made to the Company . . . . All applications must be made on forms acceptable to the Company." S.App. 176 (emphasis added). The "Participating Employer Application and Agreement" provides that eligible employees "must apply." S.App. 179. The Administration Guide, provided by Starmark, provides: "Each employee must complete, sign and date the Starmark Employee Enrollment Form . . . in order to apply for coverage under the group insurance plan." S.App.

188. Finally, on the Enrollment Form, under the heading "Waiver of Coverage," there is a provision: "This is to certify that I have been given the opportunity to *apply* for group medical and/or dental coverage through my employer and I have decided not to *apply*. I understand that if I choose to *apply for this coverage in the future*, my application may be subject to individual medical underwriting, and I may be required to furnish evidence of insurability at my own expense." S.App. 194 (emphases added).

Whether Kamler did or did not intend to complete the enrollment process is irrelevant. It is undisputed that Kamler did not in fact complete the enrollment process. In light of the clear language of the PAL Plan, it was unreasonable for Kamler to interpret the representations by Lamplota, PAL or the PAL Plan documents as excusing enrollment. Thus, Kamler cannot satisfy the requirement of reasonable reliance.

A final problem with Kamler's reliance on estoppel is that some of the alleged misrepresentations were oral, and Kamler does not fit into the exception carved out by *Bowerman* for oral misrepresentations. In *Bowerman*, we permitted oral misrepresentations to be a basis for ERISA estoppel only if: (1) the ERISA plan was ambiguous and (2) an agent of the plan, or someone with apparent authority to interpret the plan, made the oral misrepresentations. *Bowerman*, 226 F.3d at 588. Here, the PAL Plan documents were not ambiguous about the requirement of enrollment for coverage. Further, it was unreasonable for Kamler to believe that Lamplota had apparent authority to modify the PAL Plan by excusing enrollment since the enrollment form clearly indicates that enrollment was mandatory and that any questions should be addressed to Starmark. *Cf. Bowerman*, 226 F.3d at 589 ("There is considerable force to the argument that, given the clarity of this particular direction, it was not reasonable for the [employee] to seek advice elsewhere.").

Thus, because Kamler cannot show that there was a misrepresentation and he cannot show reasonable reliance on any alleged misrepresentation, Kamler is not entitled to recover his medical expenses from the PAL Plan or from any other of the present defendants on any theory of estoppel. The shortness of the time he spent in Brazil, as a PAL employee, no doubt contributed to his difficulties with health insurance, but this factor does not change our analysis.

## C.

Kamler also argues that he can recover his medical expenses under the PAL Plan because PAL, through its agent Lamplota, breached its fiduciary duties to him under the Plan. Kamler alleges that PAL breached its fiduciary duties when: (1) Lamplota assured Kamler that he would be covered by PAL's insurance from the beginning of his employment when in fact PAL imposed a 30-day waiting period, (2) PAL delayed in providing him with the enrollment form until May 6, 1998, (3) PAL provided him with a materially incomplete enrollment form because it omitted an allegedly crucial "Notice Under the Fair Credit Reporting Act" (FCRA notice), (4) PAL failed to inform him that enrollment was a requirement of coverage and (5) PAL failed to respond to his specific request for information about privacy concerns.

To be a fiduciary of an ERISA plan, an individual "must exercise a degree of discretion over the management of the plan or its assets, or over the administration of the plan itself." Under ERISA, a fiduciary must "discharge his interests with respect to a plan solely in the interest of the participants and beneficiaries." 29 U.S.C. § 1104(a)(1). Fiduciaries breach this duty "if they mislead plan participants or misrepresent the terms or administration of a plan." *Anweiler v. Am. Elec. Power Serv. Corp.*, 3 F.3d 986, 991 (7th Cir. 1993). Not all errors

in communicating information regarding a plan violate a fiduciary's duty under ERISA, but "material facts affecting the interests of plan participants or beneficiaries" must be disclosed. *Bowerman*, 226 F.3d at 590. A plan participant may obtain individual "appropriate equitable relief" under 29 U.S.C. § 1132(a)(3) for a fiduciary's breach of fiduciary duties. *Varity Corp. v. Howe*, 516 U.S. 489, 508-15 (1996). Finally, although not explicitly indicated by the prior caselaw, the plaintiff must allege that the breach of fiduciary duty caused some harm to him or her that can be remedied.

Here, none of the allegations support a claim for breach of fiduciary duty on the part of PAL or its agent, Lamplota. Lamplota's mistaken assurance that Kamler was immediately covered could be a breach of fiduciary duty only if Kamler had enrolled and was then denied medical benefits during the 30-day waiting period. This is a simple application of the principle of causality and the conditions of liability are not met here. Similarly, the delay in providing Kamler with the enrollment form would be a breach of a fiduciary duty only if Kamler had actually enrolled but then was denied medical benefits for the period prior to the date of enrollment. The failure expressly to inform Kamler that enrollment was a requirement of coverage was not a breach of fiduciary duty because the PAL Plan made this abundantly clear. PAL had no duty to emphasize something that had already been clearly communicated to Kamler.

Finally, the failure to provide a FCRA Notice[3] and PAL's failure to respond to Kamler's specific request for infor-

---

[3] Starmark usually sends a FCRA Notice attached to the enrollment form to inform enrollees that it was permitted under federal law to investigate the credit, medical history, character, general reputation, personal characteristics and mode of living of an enrollee and his or her family. In the present case, a FCRA Notice was not faxed with the enrollment form.

mation about privacy concerns are breaches of fiduciary duty only if Kamler's indefinite delay in completing the enrollment process while waiting to have his privacy concerns addressed was reasonable. To make out a claim for a breach of fiduciary duty, Kamler would at least have had to allege that, if he had received the FCRA Notice (which the law did not require to be sent to enrollees) or if he had heard a reply from Lamplota on his privacy concerns, he would have completed the enrollment process. Kamler did not make these allegations in his Complaint and, since he never did receive the assurances that he needed, it becomes purely hypothetical whether he would have completed the enrollment process if he had been so reassured. In any case, we believe that it was not reasonable for Kamler to indefinitely delay enrolling in the PAL Plan while waiting to have his privacy concerns addressed because the PAL Plan documents clearly required enrollment as a precondition for coverage. Further, although Kamler had privacy concerns, he had no legal right not to furnish the information requested if he expected coverage. Since Kamler has been previously employed and had received insurance coverage from previous employers, he knew or should have known that insurance companies were entitled to such information. Thus, PAL did not breach any fiduciary duties that it owed to Kamler.

**D.**

Besides his claims under the alternative theories of estoppel and breach of fiduciary duty, Kamler also argues that he was entitled to medical benefits under the PAL Plan because his error in failing to enroll was covered by the clerical errors provision of the insurance policy issued by Trustmark that governs the PAL Plan. The relevant insurance provision states:

> Clerical error by a Participating Employer or by the Assured shall not invalidate coverage of a person insured. This includes error in enrolling, recording or reporting for coverage purposes. Any premium not paid because of the error must be paid in full at the time the error is corrected.

After careful review of this provision, we are convinced that it does not cover a failure to enroll. Rather, the provision is designed to deal with clerical errors, for example, where an enrollee puts a wrong social security number on his application. This is a far cry from that. Kamler's argument that this provision can be the basis of relief (because the delay in getting the enrollment papers to him, the omission of the FCRA Notice and the failure to respond to his privacy concerns were all "errors in enrolling") is unpersuasive because, even if those alleged errors were "errors in enrolling," they were not the legal causes of Kamler's failure to enroll in the plan. Rather, it was Kamler's unreasonable response to those alleged errors that resulted in his failure to enroll. Hence, Kamler is not entitled to recover his medical expenses.

### E.

Kamler also seeks civil penalties against PAL, the PAL Plan and Royal for failure to provide him with the PAL Plan documents he requested. Section 502(c) of ERISA, 29 U.S.C. § 1132(c), requires plan administrators to provide information requested by plan participants or beneficiaries within 30 days of such request, or face a statutory fine.[4] ERISA authorizes a plan participant or beneficiary

---

[4] 29 U.S.C. § 1132(c)(1) provides that:

> Any administrator . . . (B) who fails or refuses to comply with a request for any information which such administrator is
> (continued...)

to sue for civil penalties if a plan administrator violates section 502(c). *See* 29 U.S.C. § 1132(a)(1)(A) ("A civil action may be brought . . . by a participant or beneficiary . . . for the relief provided for in [29 U.S.C. § 1132(c)]."). Whether to impose these statutory penalties is within the discretion of the district court and is reviewable only for abuse. 29 U.S.C. § 1132(c)(1); *see also Neuma*, 259 F.3d at 879. Here, the district court did not abuse its discretion in denying Kamler's motion for imposition of statutory penalties.

Kamler made the request for information to PAL and Royal, who are not the plan administrators, to whom section 1132(c) requires the request be made.[5] The request therefore should have been made to Starmark as plan administrator. The enrollment documents that were sent to Kamler made this clear when they stated that the PAL Plan was administered by Starmark. That Kamler

---

[4] (...continued)
required by this subchapter to furnish to a participant or beneficiary . . . by mailing the materials requested to the last known address of the requesting participant or beneficiary within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper.

[5] There is some dispute concerning whether Starmark is or is not a plan administrator. Under ERISA, where a plan administrator is not designated, the plan sponsor—in this case, PAL—is deemed the plan administrator. *See* 29 U.S.C. § 1002(16)(A)-(B). We believe that a reasonable reading of the PAL Plan documents indicates that Starmark was the plan administrator. In any case, the district court's refusal to impose statutory penalties on Starmark, PAL or Royal can be sustained based upon the lateness of Kamler's request and the outdated nature of the requested documents.

misplaced these documents due to his illness is unfortunate, but does not excuse him from complying with the requirements of section 1132(c). Second, the fact that the requested documents were outdated (since the PAL Plan had been terminated prior to Kamler's request for information) and that the request for documents came more than a year and a half after Kamler incurred his medical expenses are additional reasons why there was no abuse of discretion.

## III.

For the foregoing reasons, we AFFIRM the judgment of the district court dismissing Kamler's claims.

A true Copy:

      Teste:

                               _____

                         *Clerk of the United States Court of*
                            *Appeals for the Seventh Circuit*