**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 3 2003**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

CATHY J. HORN,

      Plaintiff-Appellant,

v.

CENDANT OPERATIONS, INC.;
CENDANT OPERATIONS, INC.
LONG TERM DISABILITY PLAN,

      Defendants-Appellees,

   and

HARTFORD LIFE INSURANCE
COMPANY,

      Defendant.

No. 01-5205
(D.C. No. 00-CV-227-E)
(N.D. Okla.)

**ORDER AND JUDGMENT** *

Before **KELLY** , **BALDOCK** , and **LUCERO** , Circuit Judges.

---

\*    This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Plaintiff Cathy Horn appeals the district court's decision granting summary judgment in favor of defendants Cendant Operations, Inc. and Cendant Operations, Inc. Long Term Disability Plan (Cendant). After Cendant denied Ms. Horn long-term disability benefits because she had not been "actively at work" at Cendant for at least one full day, Ms. Horn brought suit against Cendant under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001-1461, for breach of fiduciary duty, alleging Cendant failed to inform her of the "actively at work" requirement. In granting summary judgment for Cendant, the district court held that in light of the information Ms. Horn provided to Cendant, Cendant did not breach its fiduciary duty under ERISA by failing to inform her of the "actively at work" provision defining eligibility for long-term disability benefits. On the record before us, we conclude the grant of summary judgment in favor of Cendant was not proper and, as a matter of law, Cendant did breach its fiduciary duty. We therefore reverse and remand for further proceedings.

I.

Ms. Horn worked full-time as a customer service representative for Avis Rent A Car Systems, Inc. in Tulsa, Oklahoma. On January 1, 1999, certain operations of Avis, including the division in which she was employed, were acquired by and merged into Cendant.

In October 1998, in preparation for the merger, Linda Dovers, the Tulsa Administrative Manager of Human Resources, attended a benefits presentation at Cendant's head office in New Jersey. During the presentation, she neither learned about nor received information about an "actively at work" requirement for Cendant long-term disability benefits eligibility. Upon returning to Tulsa, Ms. Dovers instructed other human resources employees, including Gloria Storey, a former Human Resources administrative assistant, about Cendant's benefits. They, in turn, presented information about Cendant benefit coverages and options to Ms. Horn and other affected Avis employees. Although, at that time, there was no summary plan description detailing the available benefits, employees did receive a benefit planner booklet and an enrollment worksheet. These materials indicated Cendant benefits included core short- and long-term disability benefits and optional additional disability benefits, which Ms. Horn elected in early November 1998. The booklet stated core disability "coverages go into effect on the first of the month following your date of hire, which is also when you are

eligible to elect voluntary benefits." Appellant's App., vol. 1 at 336. In other words, these benefits were effective January 1, 1999. Neither the presentation information nor the materials received included an "actively at work" provision for long-term disability eligibility.

On November 30, 1998, The Hartford Life Insurance Co. sent Cendant copies of the disability plan certificates, which included the "actively at work" eligibility requirement. Although Hartford directed Cendant to provide the plan certificates to eligible employees, Cendant did not do so.

Shortly before the merger, in December 1998, Ms. Horn experienced pain and swelling in her left ankle. She took unpaid medical leave from her Avis employment the last week of December due to this condition. On December 28, Dr. Scott Dunitz indicated she had been under his care since December 25 due to "Ankle Sprain vs. Infection" with continuing pain. *Id.* at 496. Dr. Dunitz indicated she would be unable to work until further notice.

On January 1, 1999, the effective date of the merger, Ms. Horn was not scheduled to work, and the following week she did not work due to approved vacation leave. After her vacation, she sought medical advice on January 12 from her new doctor, Dr. Jeff Wright, under the Cendant plan. Pursuant to Dr. Wright's instructions, Ms. Horn did not return to work because of her ankle condition and difficulty ambulating. At a follow-up visit on January 19,

Dr. Wright again noted she should continue to be off work. Also, he diagnosed her with rheumatoid arthritis and, based on blood tests, with chronic, active hepatitis C, and referred her to Dr. Leon Yoder in connection with the hepatitis C. In February, under Dr. Yoder's care, she began chemotherapy for the hepatitis C. During the course of the chemotherapy treatment, she was unable to work due to side effects of fatigue, fever, diarrhea, myalgia and nausea.

Ms. Horn submitted two requests for short-term disability benefits–one for her ankle problems with a disability date of December 23, 1998, and one for hepatitis C and rheumatoid arthritis with a disability date of January 12, 1999. Both claims were processed under, and she received benefits under, the Avis short-term disability plan. As an Avis employee, however, Ms. Horn had not elected available optional long-term disability insurance.

From the onset of her problems, Ms. Horn had twenty to fifty conversations with Ms. Storey, including discussions about disability benefits. Although both Ms. Storey and Ms. Dovers knew of the complexity and confusion about benefits after the merger, neither questioned the treatment of the second disability claim under the Avis plan. In April or May 1999, Ms. Storey first learned that Ms. Horn was never an Avis long-term disability plan participant. Thereafter, Ms. Storey determined Ms. Horn was not eligible for Cendant long-term disability benefits because she had not been "actively at work" for Cendant for one full day.

In June 1999, after the Avis short-term disability benefits ended, Cendant terminated Ms. Horn's employment and informed her she was ineligible for Cendant long-term disability benefits because she failed to satisfy the "actively at work" requirement. Later in June, Cendant issued its summary plan description, which included the requirement that an employee be "actively at work" at Cendant for one full day in order to be eligible for long-term disability benefits.

Ms. Horn filed suit in district court alleging, among other things, that Cendant breached its fiduciary duty to her under ERISA law by failing to inform her of the "actively at work" provision in the Cendant long-term disability plan.[1] During the discovery process, Ms. Dovers testified at her deposition that she first learned of the "actively at work" requirement in June, and at that time did not have a copy of the plan. *See id.* vol. 2 at 717-19. Also, she testified that if she had known in January of 1999 about the "actively at work" requirement for Cendant long-term disability benefits eligibility, she might have advised Ms. Horn to obtain a doctor's release so that she could work for one day to take advantage of the Cendant benefits. *See id.* at 765-66; *see also id.* at 802-03 (deposition testimony of Ms. Storey that she would have conveyed one-day requirement if she

---

[1] Ms. Horn also claimed that Hartford improperly denied her long-term disability benefits. The district court rejected this argument, deciding she was not eligible for coverage under the policy because she had not satisfied the "actively at work" provision. Ms. Horn does not appeal this decision.

had known about it). At her deposition, Ms. Horn testified that if Cendant had advised her about the one-day "actively at work" provision, she would have met that requirement. *Id.* at 859-63.

Both Ms. Horn and Cendant filed motions for summary judgment. The district court entered judgment in favor of Cendant, reasoning that

> [u]nder the facts of this case, the disability initially presented, and the information provided by [Ms. Horn], the conduct of [Ms.] Dovers and [Ms.] Storey does not amount to a breach of fiduciary duty. The information provided by them was not only accurate, it was complete in light of the facts known by them.

*Id.* vol. 3 at 1137.

Ms. Horn filed a timely motion to reconsider. *See* Fed. R. Civ. P. 59(e). The district court denied the motion, reiterating that Ms. "Horn failed to provide relevant information about her medical condition and applications for disability." Appellant's App., vol. 3 at 1188. This appeal followed.

## II.

### A.

As a threshold matter, we consider the jurisdictional issue of whether Ms. Horn has standing to assert a claim for breach of fiduciary duty.[2] *See*

---

[2] Although the district court did not address Cendant's challenge to Ms. Horn's standing to bring this action, we must satisfy ourselves both that the district court had, and we now have, jurisdiction over this case. *Alexander v.*

(continued...)

*Alexander v. Anheuser-Busch Cos., Inc.*, 990 F.2d 536, 538 (10th Cir. 1993). We conclude that she does. "Pursuant to 29 U.S.C. § 1132, a 'participant' has standing to bring a civil action to enforce [her] rights under the terms of an ERISA plan or to enforce ERISA's provisions." *Alexander*, 990 F.2d at 538. A plan participant includes a former employee with a colorable claim that she will prevail in a suit for benefits. *Id.* (citing *e.g.*, *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 117-18 (1989)); *see also* 29 U.S.C. § 1002(7) (defining participant as "former employee . . . who is or may become eligible to receive a benefit of any type from an employee benefit plan").

Here, there are two questions: is Ms. Horn a former employee and, if so, has she presented a colorable claim. We answer both questions in the affirmative. Apart from the long-term disability benefits denial, Cendant consistently treated Ms. Horn as an employee, including providing her with Cendant medical benefits, notifying her of her employment termination and offering her COBRA[3] insurance upon termination from employment. *See* Appellant's App., vol. 2 at 760A (deposition testimony of Ms. Storey that Ms. Horn was Cendant employee on January 1, 1999). Thus, Ms. Horn is a former Cendant employee.

---

[2](...continued)
*Anheuser-Busch Cos., Inc.*, 990 F.2d 536, 538 (10th Cir. 1993).

[3]     Consolidated Omnibus Budget Reconciliation Act of 1985, 29 U.S.C. §§ 1161-1168.

"[T]he requirements for a colorable claim are not stringent; [Ms. Horn] need have only a nonfrivolous claim for the benefit in question." *Kamler v. H/N Telecomm. Servs., Inc.*, 305 F.3d 672, 678 (7th Cir. 2002), *cert. denied*, 123 S. Ct. 1634 (2003). As discussed below, she does have a nonfrivolous, colorable claim for long-term disability benefits. *See generally Shea v. Esensten*, 107 F.3d 625, 628 (8th Cir. 1997) (holding that "if the fiduciary's alleged ERISA violation caused the former employee to lose plan participant status, the former employee will nonetheless have standing to challenge the fiduciary violation"); *Swinney v. Gen. Motors Corp.*, 46 F.3d 512, 519 (6th Cir. 1995) (holding "that so long as a former employee would have been in a class eligible to become a member of the plan but for the fiduciary's alleged breach of duty, he 'may become eligible' for benefits under the plan, and is therefore a 'participant' under § 1002(7) for the purposes of standing"). Thus, Ms. Horn has standing to assert a claim for breach of fiduciary duty.

## B.

Turning to the merits, Ms. Horn argues the district court erred in granting Cendant's motion for summary judgment and in denying her motion for summary judgment, because that court erred in determining Cendant's acts and omissions did not constitute a breach of fiduciary duty. Specifically, Ms. Horn contends (1) the district court too narrowly considered Cendant's acts and omissions by

focusing only on Ms. Dovers' and Ms. Storey's conduct; (2) the district court

erred in limiting the scope of Cendant's fiduciary duty to facts known to

Ms. Dovers and Ms. Storey; and (3) the district court erred in excusing Cendant's

breach of fiduciary duty by blaming Ms. Horn for failing to provide relevant

information about her medical condition and applications for disability.

> We review the grant of summary judgment *de novo*, taking the facts and the reasonable inferences to be drawn from them in the light most favorable to the nonmoving party. Under Rule 56(c), the moving party bears the initial burden of presenting evidence to show the absence of a genuine issue of material fact. In our circuit, the moving party carries the burden of showing beyond a reasonable doubt that it is entitled to summary judgment. Once this burden is met, Rule 56(e) requires the non-moving party to set forth specific facts showing there is a genuine issue for trial. . . . [T]he moving party . . . has both the initial burden of production on a motion for summary judgment and the burden of establishing that summary judgment is appropriate as a matter of law. The moving party may carry its initial burden either by producing affirmative evidence negating an essential element of the nonmoving party's claim, or by showing that the nonmoving party does not have enough evidence to carry its burden of persuasion at trial.

*Trainor v. Apollo Metal Specialities, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002)

(citations and quotations omitted).

Ms. Horn argues Cendant breached its fiduciary duty by failing to inform

her about the "actively at work" requirement for long-term disability plan

eligibility, thereby failing to provide her complete and accurate material

information concerning her eligibility. She maintains Cendant and its Human

Resources employees together acted as fiduciaries. Although the district court did

-10-

not address the fiduciary issue, we do so before addressing whether any fiduciary duty had been breached. "[A] 'person is a fiduciary with respect to a plan,' and therefore subject to ERISA fiduciary duties, 'to the extent' that . . . she 'exercises any discretionary authority or discretionary control respecting management' of the plan, or 'has any discretionary authority or discretionary responsibility in the administration' of the plan." *Varity Corp. v. Howe*, 516 U.S. 489, 498 (1996) (quoting 29 U.S.C. § 1002(21)(A)). Cendant, through its Employee Benefits Committee, was the plan administrator. Thus, it was a fiduciary, owing obligations to plan participants, such as Ms. Horn. *See Fischer v. Phila. Elec. Co.*, 994 F.2d 130, 135 (3d Cir. 1993).

Cendant disputes that Ms. Storey and Ms. Dovers acted as fiduciaries on behalf of Cendant at the times they conferred with Ms. Horn about long-term disability benefits. As is more fully discussed below, when presenting the benefits available under Cendant, Cendant spoke through these Human Resources employees as plan administrator, and it acted as a fiduciary when it conveyed incomplete information about the long-term disability benefits plan. *See Varity*, 516 U.S. at 501, 502-03. Cendant relied on Ms. Dovers and Ms. Storey to present information about Cendant benefits and to provide eligibility information to Ms. Horn. Cendant's fiduciary "obligations cannot be circumvented by building a

'Chinese wall' around those employees on whom plan participants reasonably rely for important information and guidance . . . ." *Fischer*, 994 F.2d at 135.

Having decided Cendant, itself and speaking through its Human Resources employees, acted as a fiduciary, we next consider the scope of those fiduciary duties. As an ERISA plan administrator, Cendant had a fiduciary duty to act "solely in the interest of the participants and beneficiaries" for purposes of providing benefits and administering the plan. 29 U.S.C. § 1104(a)(1)(A). Cendant was required to conduct its duties "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." *Id.* § 1104(a)(1)(B). Congress, however, did not enumerate all powers and duties for fiduciaries when enacting ERISA; instead, it invoked the common law of trusts to define the general scope of authority and responsibility of fiduciaries. *Ershick v. United Mo. Bank of Kan. City, N.A.*, 948 F.2d 660, 666 (10th Cir. 1991) (citing *Cent. States, S.E. & S.W. Areas Pension Fund v. Cent. Transp., Inc.*, 472 U.S. 559, 570 (1985)); *see also Varity*, 516 U.S. at 496-97, 502, 506.

"[A] fiduciary has a legal duty to disclose to the beneficiary only those material facts, known to the fiduciary but unknown to the beneficiary, which the beneficiary must know for its own protection." *Glaziers & Glassworkers Union*

*Local No. 252 Annuity Fund v. Newbridge Sec., Inc.*, 93 F.3d 1171, 1182 (3d Cir. 1996); *see also Jordan v. Fed. Express Corp.*, 116 F.3d 1005, 1015 (3d Cir. 1997); Restatement (Second) of Trusts § 173, cmt. d (1959). "The duty to disclose material information is the core of a fiduciary's responsibility . . . ." *Eddy v. Colonial Life Ins. Co. of Am.*, 919 F.2d 747, 750 (D.C. Cir. 1990); *see also Harte v. Bethlehem Steel Corp.*, 214 F.3d 446, 452 (3d Cir. 2000); *Shea*, 107 F.3d at 628. A fiduciary's misrepresentation or failure to disclose is material "if there is a substantial likelihood that it would mislead a reasonable employee in making an adequately informed . . . decision." *Jordan*, 116 F.3d at 1015 (quotation omitted); *see also Harte*, 214 F.3d at 451 ("ERISA was enacted, in part, to ensure that employees receive sufficient information about their rights under employee benefit plans to make well-informed employment . . . decisions."). Without sufficient information, plan beneficiaries may not be alerted that they should inquire further. *See Glaziers & Glassworkers Union Local No. 252 Annuity Fund*, 93 F.3d at 1181.

A plan administrator must furnish a summary plan description to all plan beneficiaries and participants. 29 U.S.C. § 1022(a). Employees cannot be bound to policy terms for which they received no notice. *See Member Servs. Life Ins. Co. v. Am. Nat'l Bank & Trust Co. of Sapulpa*, 130 F.3d 950, 956 (10th Cir.

-13-

1997); *Bartlett v. Martin Marietta Operations Support, Inc. Life Ins. Plan* , 38 F.3d 514, 517 (10th Cir. 1994).

Cendant provided only the benefits booklet and enrollment worksheet at the time Ms. Horn made her benefits elections. Cendant therefore failed to provide material information at the enrollment time. Although the booklet described eligibility for benefits, it did not qualify long-term disability benefits with an "actively at work" requirement. Cendant published and distributed its summary plan description, including the "actively at work" provision, only after Ms. Horn's termination.

We recognize that plan language typically controls. *See Alexander* , 990 F.2d at 539. Here, however, Cendant failed to make its plan or a summary plan description available to Ms. Horn. Under the materials she received, Ms. Horn was eligible for benefits on January 1, 1999, and we cannot fault her for failing to request information about an undisclosed "actively at work" requirement.

Cendant's failure to disclose material information continued beyond the point of enrollment for benefits. Ms. Horn spoke to Ms. Storey between twenty and fifty times about her health problems and disability benefits. Even if Ms. Horn should have told Cendant she had not elected Avis long-term disability benefits, that information was available to Cendant and its Human Resources

personnel. The Human Resources personnel knew the merger complicated employee benefits issues, yet they did not question whether the second short-term disability claim should be treated under the Avis or Cendant plans. Nor did they timely investigate long-term disability eligibility. Once Ms. Horn informed Cendant about her health problems and inquired about disability benefits, Cendant had an affirmative duty to provide complete and accurate eligibility information, including the "actively at work" requirement, that Cendant knew or should have known as a fiduciary which was material to Ms. Horn's circumstances. *See Bixler v. Cent. Pa. Teamsters Health & Welfare Fund*, 12 F.3d 1292, 1300 (3d Cir. 1993); *Eddy*, 919 F.2d at 751. Even if Ms. Horn's questions concerning disability benefits were not precise, Cendant still had a duty to communicate the eligibility requirement, of which it knew or should have known. *See Eddy*, 919 F.2d at 751. This is especially so, because, as noted above, no information she received would have led her to ask about the "actively at work" requirement. *See Harte*, 214 F.3d at 453.

Ms. Horn cannot be bound by policy terms for which she had no notice. *See Member Servs. Life Ins. Co.*, 130 F.3d at 956. Cendant therefore breached its fiduciary duty, and misled Ms. Horn by failing to disclose the material "actively at work" eligibility requirement of the long-term disability plan.

Cendant argues that because Ms. Horn repeatedly contended she was unable to work due to disability she cannot argue that she could have returned to work for at least one day. [4] The critical issue at this juncture is whether Cendant adequately disclosed the "actively at work" requirement. *Cf. Rhorer v. Raytheon Eng'rs & Constructors, Inc.*, 181 F.3d 634, 644 (5th Cir. 1999) (holding satisfaction of active work requirement was irrelevant because summary plan description did not adequately disclose requirement). Clearly, it did not. If Ms. Horn had been aware of the "actively at work" requirement, she could have made an informed decision about returning to work for one day. *See* Appellant's App. vol., 2 at 871-72 (affidavit of Dr. Wright stating that before chemotherapy, Ms. Horn could have gone back to her sedentary job if necessary to do so, but it was in her best interest to be off work). Although Ms. Horn may not have been able to return to work permanently, she may have been able to work for one day in order to receive long-term disability benefits, and Cendant may have accommodated her need to do so, provided her doctor would give her permission to return to work for one day.

---

[4] Cendant suggests that Ms. Horn's acceptance of short-term disability benefits if she could work for one day necessarily amounts to insurance fraud. We reject this argument. *See generally Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 797-98, 806 (1999) (holding receipt of social security disability benefits does not automatically estop recipient from pursuing Americans with Disabilities Act claim, but recipient must explain apparent contradiction arising out of earlier social security total disability claim).

-16-

Viewing the evidence in the light most favorable to Ms. Horn, we conclude the district court erred in deciding Cendant did not breach its fiduciary duty to her when it failed to inform her about the long-term disability plan's "actively at work" provision. On the record before us, we further conclude as a matter of law that reasonable minds could not differ that Cendant made material misrepresentations and omissions to Ms. Horn concerning eligibility for long-term disability benefits. *See Fischer*, 994 F.2d at 135 (indicating that whether misrepresentation is material is mixed question of law and fact). Thus, we hold Cendant breached its fiduciary duty to Ms. Horn. Because unanswered questions remain, we remand to the district court for further proceedings addressing whether Ms. Horn qualified for long-term disability benefits, with no "actively at work" eligibility requirement.

C.

In light of our holding that the district court erred in granting summary judgment for Cendant, we need not address Ms. Horn's claim that the district court erred in denying her motion to reconsider.

III.

The judgment of the United States District Court for the Northern District of Oklahoma is REVERSED, and the action is REMANDED for further proceedings.

Entered for the Court


Paul J. Kelly, Jr.
Circuit Judge