UNPUBLISHED ORDER
Not to be cited per Circuit Rule 53

In the

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued January 6, 2005
Decided May 25, 2005

**Before**

Hon. Daniel A. Manion, *Circuit Judge*

Hon. Diane P. Wood, *Circuit Judge*

Hon. Ann Claire Williams, *Circuit Judge*

No. 04-2843

| | |
|---|---|
| RHONDA DEJOURNETT, | Appeal from the United States District |
| *Plaintiff-Appellant,* | Court for the Northern District of |
| *v.* | Indiana, Fort Wayne Division. |
| PARKVIEW HEALTH SYSTEM, INC., | No. 1:03CV097 |
| *Defendant-Appellee.* | Roger B. Cosbey, *Magistrate Judge.* |

## O R D E R

Appellant Rhonda DeJournett sued her former employer, Parkview Health System, Inc. ("Parkview"), to recover severance pay. The district court granted summary judgment in favor of Parkview, and we affirm.

## I.   BACKGROUND

DeJournett began working as the Evening Supervisor in Parkview's Dietary Department on March 6, 1995.  In 2000, Parkview decided to reorganize its Dietary Department ("Department") by combining its cafeteria positions with the patient food service positions that were already a part of the Department.  While this reorganization would create five new jobs in the Department, it would also eliminate DeJournett's supervisory position.

On October 30, 2000, Parkview apprised DeJournett of the reorganization, notified her that her position would eventually be eliminated, and informed her of the creation of the five new positions for which she was eligible to interview.  DeJournett eventually interviewed for all five of the new positions but ultimately was not selected for any of them.

On Thursday, February 1, 2001, DeJournett was scheduled to work from 11 A.M. to 7 P.M.  During her shift, DeJournett's immediate supervisor, Cindy Morphett, as well as the Vice President for Employee Relations, John Dortch, called her into a meeting where the two informed DeJournett that she had not been chosen for any of the five new positions and that her current position would be eliminated on Monday, February 5, 2001.  Morphett and Dortch also explained to DeJournett that she was eligible to work with Human Resources over the next thirty days to try to find another position at Parkview.  The issue of severance pay, however, was not discussed at this meeting.  In response, DeJournett stated she had "had enough of this shit" and that she "did not know what the hell [she was] going to do." DeJournett then stormed out of the conference room.

Shortly thereafter, DeJournett returned to the conference room and told Morphett, "I know this is probably what you want anyway[,] Cindy; here's your keys, your pager, your badge, and you better hold onto your ass." DeJournett then left the building without finishing the remainder of her shift and failed to show up on the next day for her scheduled shift.  Based on her conduct, Parkview assumed, and DeJournett does not contest, that DeJournett resigned her position as of February 1, 2001.

## II.   ANALYSIS

We review *de novo* a district court's grant of summary judgment.  *Kamler v. H/N Telecomm. Servs.*, 305 F.3d 672, 677 (7th Cir. 2002).  The issue on appeal is limited to whether the district court properly interpreted and found under the terms of Parkview's Personnel Policy ("Policy") that DeJournett was not eligible for severance benefits.

Parkview's policies regarding department reorganization, position elimination and severance are set out in the company's Personnel Policy Manual and provide, in relevant part:

IV. PROCEDURE

\* \* \*

A. Department Reorganization

\* \* \*

3. [...] if the reorganization has been completed, and there is not a position available for which the employee is qualified, position elimination will occur, and the employee will be eligible for the position elimination options as outlined by this policy.

\* \* \*

B. Position Elimination

\* \* \*

3. The displaced employee will be given a minimum of four (4) week's [sic] notice of the position elimination. During this time he/she will meet with Human Resources and make a decision regarding taking severance pay and leaving [Parkview] or remaining in their current position for eight weeks (if this option is available at the discretion of their manager), while they explore vacant positions within the System.

Based on her interpretation of Parkview's Policy, DeJournett argues that she is entitled to severance pay because she became a displaced employee when she was informed on February 1, 2001, that her position was going to be eliminated on February 5, 2001. DeJournett further argues that Section IV(B)(3)'s "notice" provision is the "vesting mechanism" for her right to severance and that a "displaced employee" is one who knows her job will be eliminated at some point in the future.

Contrary to DeJournett's interpretation, Section IV(A)(3) states that *if* reorganization is completed *and* there is no position for which DeJournett is qualified *then* "position elimination will occur and [DeJournett] will be eligible for the position elimination options as outlined by this policy." This section makes clear that any possible position elimination options flow only from the completion of the department's reorganization and the lack of availability of comparable jobs. In other words, DeJournett would not have been entitled to severance pay until Parkview completed the reorganization of the Department and confirmed that there were no comparable positions for DeJournett.

Based on the plain language of Parkview's policy, the facts of this case establish that DeJournett was not eligible for severance pay because she quit her position before the Department's reorganization was complete. On Thursday, February 1, 2001, Parkview notified DeJournett that she was not selected for any of the five available positions and that her current position would finally be eliminated on Monday, February 5, 2001, which we can assume marked the end of the Department's reorganization. For the remainder of her shift on Thursday, February 1, and for Friday, February 2, however, DeJournett still had a position at Parkview, and Parkview had not completed the Department's reorganization. As a result, when DeJournett stormed out on Thursday, February 1, she voluntarily resigned from her position and therefore never became eligible for severance benefits.

Furthermore, nothing in DeJournett's meeting with Morphett and Dortch triggered severance eligibility. Section IV(B)(3) establishes that even once a position is eliminated severance is not automatic as an employee has the option of either collecting severance or conducting a job search within the Parkview system. Under Section IV(B)(3), upon position elimination, DeJournett was to "meet with Human Resources and make a decision regarding taking severance pay and leaving [Parkview] or remaining in their current position . . . , while they explore vacant positions" at Parkview. There is no evidence in the record that DeJournett ever met with Human Resources to discuss severance pay or finding another position within Parkview. Instead, the evidence establishes that once DeJournett learned that she had failed to be selected for any of the open positions, DeJournett turned in her badge, cursed at her supervisor, walked out on the remainder of her shift, and failed to appear for work the following day.

Under the facts of this case, DeJournett clearly has cut off her own nose to spite her face. DeJournett is neither entitled to nor eligible for severance under the plain language of Parkview's Policy.

## III.    CONCLUSION

For the reasons stated above, we AFFIRM the district court's grant of summary judgment in favor of Parkview Health System, Inc.