DECATUR MEMORIAL HOSPITAL, Plaintiff–Appellant,

v.

CONNECTICUT GENERAL LIFE INSURANCE COMPANY and Bridgestone/Firestone, Inc., Defendants–Appellees.

No. 92–2532.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 17, 1993.

Decided April 1, 1993.

---

Darrell E. Statzer, Jr. (argued), Thom Moss, Wilson, Dyar, Moss & Statzer, Decatur, IL, for plaintiff-appellant.

Susan M. Hickman, William Hardy (argued), Hinshaw & Culbertson, Springfield, IL, for defendants-appellees.

Before EASTERBROOK and KANNE, Circuit Judges, and WILL, Senior District Judge.[*]

EASTERBROOK, Circuit Judge.

Decatur Memorial Hospital provided medical care to James Long between his admission on September 24, 1989, and his death 32 days later. Information supplied by another hospital led Decatur Memorial Hospital to believe that Long had health insurance underwritten by Connecticut General Life Insurance Company. The Hospital checked with Connecticut General, which verified coverage and approved the medical services the Hospital proposed to supply. Whoever answered the Hospital's inquiries had stale information: since April 1989 Long's coverage had been supplied by another firm. Whether this was because Long had changed jobs, or because his employer (Bridgestone/Firestone, Inc.) had changed carriers, the record does not reveal. Eventually the Hospital submitted its bill to the insurer providing coverage during Long's final month. That insurer paid only half, penalizing the Hospital for neglecting to obtain approval of the services in advance. The Hospital filed this suit against Connecticut General and Bridgestone/Firestone, seeking to collect the rest of its fees.

The Hospital's complaint, filed in state court, asserts that "[b]ut for the negligent misrepresentation by [Connecticut General] . . . in verifying nonexistent coverage [the Hospital] would have further investigated coverage for this patient, obtained precertification [from the actual carrier] and would have received payment in full for the medical services rendered to the patient.... [Connecticut General therefore] is estopped by virtue of the negligent misrepresentation of its employee, servant or agent from denying coverage." Connecticut General promptly removed the action to federal court, observing that by requesting "coverage" under a policy that fulfilled an employer's welfare benefit plan, the complaint necessarily stated a claim under the Employee Retirement Income Security Act. ERISA in turn scuttles such claims, the district court held, because that statute does not require employers and their carriers to do anything other than carry out their commitments. Arguments that negligent misrepresentations "estop" sponsors or administrators from enforcing the plans' written terms have been singu-

[*] Hon. Hubert L. Will, of the Northern District of Illinois, sitting by designation.

larly unsuccessful. E.g., *Pilot Life Insurance Co. v. Dedeaux*, 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987); *Russo v. Health, Welfare & Pension Fund*, 984 F.2d 762, 767–769 (7th Cir.1993); *Pohl v. National Benefits Consultants, Inc.*, 956 F.2d 126 (7th Cir.1992); *Bartholet v. Reishauer A.G. (Zürich)*, 953 F.2d 1073 (7th Cir.1992).

▮ Attempting to avoid these decisions, the Hospital observes that it is a provider of medical care rather than a beneficiary under the ERISA plan. It is not a party to, and thus not bound by, limitations in the plan. For good measure, the Hospital adds that by the time it rang up Connecticut General, that carrier was not administering any ERISA plan for Long's benefit. Why, then, should ERISA have anything to do with this case?, the Hospital inquires. One potential answer is that the resources to pay any judgment must come ultimately from the ERISA plan that Bridgestone/Firestone maintains for its employees' benefit. The function of the anti-estoppel doctrine is to preserve the assets of welfare benefit plans for the purposes laid out in them. A second potential answer is that to the extent the Hospital demands "coverage", as its complaint insists, it steps into the shoes of the beneficiary to whom it provided care. An assignee cannot have greater rights than the assignor possessed, and cases such as *Pohl* hold that the beneficiary cannot obtain more than the plan provides in writing. An assignee of benefits under an ERISA plan becomes a statutory "beneficiary" and thus may use 29 U.S.C. § 1132(a)(1)(B) to collect, see *Kennedy v. Connecticut General Life Insurance Co.*, 924 F.2d 698 (7th Cir.1991); with this designation comes all limitations on beneficiaries' entitlements.

Although these replies have force, they are not necessarily conclusive. A beneficiary may read the plan to ascertain his entitlements. Employers must furnish their workers with summaries of the plans and make the full texts available on demand. Cases holding that misrepresentations by the plan's administrator or insurer do not permit departures from the plan may establish no more than that the written word prevails over inconsistent oral declarations. A third-party provider of medical care, by contrast, may lack access to the written plan. Medical providers that cannot rely on carriers' oral representations of coverage may decline to furnish care or raise their prices as a hedge against nonpayment. Either response would undermine the interests of the workers that ERISA is supposed to protect. What is more, permitting physicians, hospitals, and other providers to collect for services rendered in reliance on oral representations could fulfill the written terms of plans. This case may be an example. Long was entitled to medical care. The Bridgestone/Firestone plan reduces the amounts paid to hospitals that neglect to obtain certification in advance. But Decatur Memorial Hospital *did* obtain certification, albeit from the wrong insurer. The plan gets a windfall, saving half of the costs of care furnished to a covered employee, when in all likelihood a call to the right carrier would have produced certification and full payment. Employers cannot expect to assure medical benefits for their workers by giving hospitals and other providers the runaround.

Cogent arguments on both sides have led to a conflict among the circuits. Compare *Cromwell v. Equicor–Equitable HCA Corp.*, 944 F.2d 1272 (6th Cir.1991), with *Memorial Hospital System v. Northbrook Life Insurance Co.*, 904 F.2d 236 (5th Cir. 1990). We need not choose sides, because even if the Hospital's status as a provider of medical care enables it to escape the limitations on claims under ERISA—that is, even if a claim under state law escapes the broad preemption clause in ERISA, 29 U.S.C. § 1144(a), see *District of Columbia v. Greater Washington Board of Trade*, —— U.S. ——, 113 S.Ct. 580, 121 L.Ed.2d 513 '(1992); *Lister v. Stark*, 890 F.2d 941 (7th Cir.1989)—the provider still needs a theory of recovery valid under state law. At oral argument we asked the Hospital to identify its theory. Counsel could not do so, asking us to remand to state court so that the Hospital could formulate a theory there. Yet we have already concluded that the removal was proper, because the complaint pleaded a federal claim. If ERISA

leaves some corner open to state law, a district court could resolve the federal claim and dismiss without prejudice, or remand, see *Carnegie–Mellon University v. Cohill*, 484 U.S. 343, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988), to permit the state court to address the state-law theory. But it need not remand, 28 U.S.C. § 1367, and a remand would be imprudent if the state-law theory does not exist or is preempted.

Aside from intoning "negligent misrepresentation," the Hospital has done nothing to demonstrate a potential entitlement to relief under state law. We went looking for cases in Illinois in which a firm told a provider that a patient was insured, changing its tune after the provider had rendered services. The only case of this kind that we could find squarely holds that a negligent misrepresentation of coverage does not support recovery. *University of Chicago Hospitals v. United Parcel Service*, 231 Ill.App.3d 602, 173 Ill.Dec. 64, 596 N.E.2d 688 (1st Dist.1992). Accord, *International Surplus Lines Insurance Co. v. Fireman's Fund Insurance Co.*, 1989 WL 99771, 1989 U.S. Dist. Lexis 10116 (N.D.Ill.). Both of these cases rely on *Moorman Manufacturing Co. v. National Tank Co.*, 91 Ill.2d 69, 61 Ill.Dec. 746, 435 N.E.2d 443 (1982), which holds that purely economic injury attributable to a negligent misrepresentation is not actionable in Illinois unless the defendant is in the "business of supplying information for the guidance of others in their business transactions". 91 Ill.2d at 89, 61 Ill.Dec. 746, 435 N.E.2d 443. *University of Chicago* and *International Surplus Lines* hold that employers and their medical carriers are not in the "business of supplying information" to providers of medical services.

One might doubt this conclusion as an original matter. Exchange of information for the guidance of business transactions lies at the core of the relationship between insurers and providers. *Moorman* prevents the use of tort measures of damages in what are really contract cases. See *Rar-*

din v. T & D Machine Handling, Inc.*, 890 F.2d 24, 27–29 (7th Cir.1989). Persons who have entered into consensual arrangements and specified their own duties and remedies need not fear that courts will use tort doctrine to pull the rug out from under them. The point of the Hospital's claim, by contrast, is that it did not succeed in forming a contract providing for reimbursement, making tort remedies exclusive. It wants no more than it would have received had the insurance been as represented. Still, the Hospital has not tried to persuade us that the Supreme Court of Illinois is likely to disapprove *University of Chicago*, and we are left with the norm that federal courts accept the decisions of intermediate state tribunals. Developments in the state courts may call *University of Chicago* into question or may reinforce it. Until Illinois recognizes a claim of the sort the Hospital advances, we need not decide whether ERISA would preempt a claim based on that theory.

Affirmed.