**Isadore GOLDBERG, d/b/a Assured Lifetime Benefits, Plaintiff,**

v.

**PRUDENTIAL INSURANCE COMPANY OF AMERICA and Sun Microsystems, Inc., Defendants.**

No. 94 C 3900.

United States District Court, N.D. Illinois, Eastern Division.

July 26, 1995.

See also 874 F.Supp. 874.

Leonard D. Saphire–Bernstein, Law Office of Leonard Saphire–Bernstein, Chicago, IL, for Isadore Goldberg.

Daniel A. Engel, Joseph J. Hasman, Sherri Lee Giffin, Peterson & Ross, Chicago, IL, for Prudential Ins. Co. of America.

Stephanie Marie Alexander, Robert A. Gordon, Pillsbury, Madison and Sutro, San Francisco, CA, Leonard A. Gail, Bartlit, Beck, Herman, Palenchar & Scott, Chicago, IL, for Sun Microsystems, Inc.

### *MEMORANDUM OPINION*

BRIAN BARNETT DUFF, District Judge.

On June 27, 1994, Isadore Goldberg ("Goldberg") sued Prudential Insurance

Company ("Prudential") and Sun Microsystems, Inc. ("Sun") for tortious interference with contract. On September 7, pursuant to Fed.R.Civ.P. 12(b)(1) and (6), Prudential and Sun moved to dismiss. For the reasons discussed below, we grant Prudential's and Sun's motions, and we dismiss this case, with prejudice.

## I. Background

Robert LoManto ("LoManto") was one of Sun's employees, and he participated in Sun's Comprehensive Welfare Plan ("Plan"), which is an employee benefit plan subject to the Employee Retirement Income Security Act ("ERISA"). Sun's Br. at 2 and 3.[1] In February 1993, LoManto suffered from a terminal illness, and he contacted National Viator Representatives, Inc. ("NVR"), "an organization that brokers the assignment of the life insurance policies of terminally ill individuals." Sun's Br. at 2; *see* Pl.'s Br. at 3. Also in February, however, LoManto and NVR learned that the Plan disallows participants to assign for value their life insurance policy benefits. Sun's Ex. 5 and 6.

Nonetheless, NVR arranged for LoManto to assign for value his insurance benefits to Goldberg, d/b/a Assured Lifetime Benefits. Amend.Compl. at ¶ 4. In June 1993, LoManto followed through and assigned his $418,000 in benefits to Goldberg for an immediate cash payment of $259,160. Sun's Br. at 4; *see* Amend.Compl. at ¶ 4 and Ex. A. In turn, Goldberg paid NVR a brokerage fee of $16,720. Sun's Br. at 4; *see* Amend.Compl. at ¶ 5.

LoManto and Goldberg required Sun's approval to complete the assignment. Accordingly, in late June, they sent to Sun the necessary paperwork, which included a form titled "assignment of group insurance." Amend.Compl.Ex. B. That form begins: "Having The Intention To Make A Gift, . . . ." *Id.* On June 29, Sun approved the assignment. Amend.Compl. at ¶ 11. Yet by August 6, Prudential discovered that LoManto did not make a gift to Goldberg but, in fact,

made an assignment for value. Sun's Br. at 5; Pl.'s Br. at 3. Prudential revoked Sun's approval of the assignment. Amend.Compl. at ¶ 13. On August 6, LoManto died. Sun's Br. at 5. Prudential paid his $418,000 in benefits to a trustee. *Id.*

## II. Discussion

### A. Preemption

■ First, we inquire whether ERISA preempts Goldberg's state law cause of action. In relevant part, ERISA's preemption clause provides: "Except as provided in subsection (b) [the saving clause], the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan . . . ." 29 U.S.C. § 1144(a) ("§ 1144").

On several occasions, the Supreme Court has interpreted § 1144, particularly its "relate to" language. In *District of Columbia v. Greater Washington Bd. of Trade*, —— U.S. ——, 113 S.Ct. 580, 121 L.Ed.2d 513 (1992), the Court wrote that it has "repeatedly stated that a law 'relate[s] to' a covered employee benefit plan for purposes of [§ 1144] 'if it has connection with or reference to such a plan.'" *Id.* at ——, 113 S.Ct. at 583, (quoting *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 97, 103 S.Ct. 2890, 2900, 77 L.Ed.2d 490 (1983)). "This reading is true to the ordinary meaning of 'relate to' . . . and thus gives effect to the 'deliberately expansive' language chosen by Congress." *Id.* (quoting *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 46, 107 S.Ct. 1549, 1552, 95 L.Ed.2d 39 (1987)). "Under [§ 1144], ERISA pre-empts any state law that refers to or has a connection with covered benefit plans . . . 'even if the law is not specifically designed to affect such plans, or the effect is only indirect.'" *Id.* (quoting *Ingersoll–Rand Co. v. McClendon*, 498 U.S. 133, 139, 111 S.Ct. 478, 482–83, 112 L.Ed.2d 474 (1990)).

On the one hand, the preemption clause is broad. In fact, the "'clause is conspicuous

---

1. We rely in part on Sun's briefs and exhibits to explain the background. We do not, however, rely on its briefs or exhibits, except for Ex. 1 (the Plan), to analyze the motion. For Ex. 1, we consider its plain, uncontroverted language, making all reasonable inferences in Goldberg's favor.

for its breadth,'" and courts should "'expansively'" apply it. *Maciosek v. Blue Cross & Blue Shield,* 930 F.2d 536, 539 (7th Cir.1991) (quoting *FMC Corp. v. Holliday,* 498 U.S. 52, 56–58, 111 S.Ct. 403, 407, 112 L.Ed.2d 356 (1990); *Ingersoll–Rand,* 498 U.S. at 138, 111 S.Ct. at 482)). The clause expresses a "clear preemptive mandate" that "remains virtually undefeated." *Tomczyk v. Blue Cross & Blue Shield,* 951 F.2d 771, 776 (7th Cir.1991), *cert. denied,* 504 U.S. 940, 112 S.Ct. 2274, 119 L.Ed.2d 201 (1992); *Maciosek,* 930 F.2d at 539. It "knocks out any effort to use state law, including state common law, to obtain benefits under [an ERISA] plan." *Pohl v. National Benefits Consultants, Inc.,* 956 F.2d 126, 128 (7th Cir.1992); *see Smith v. Blue Cross & Blue Shield,* 959 F.2d 655, 657 (7th Cir.1992).

■ On the other hand, however, the preemption clause's breadth is finite. In *Fort Halifax Packing Co. v. Coyne,* 482 U.S. 1, 107 S.Ct. 2211, 96 L.Ed.2d 1 (1987), the Supreme Court stated that "ERISA preemption analysis 'must be guided by respect for the separate spheres of governmental authority preserved in our federalist system.'" *Id.* at 19, 107 S.Ct. at 2221 (quoting *Alessi v. Raybestos–Manhattan, Inc.,* 451 U.S. 504, 522, 101 S.Ct. 1895, 1905–06, 68 L.Ed.2d 402 (1981)). "Some state actions may affect employee benefit plans in too tenuous, remote, or peripheral a manner to warrant a finding that the law 'relates to' the plan." *Shaw,* 463 U.S. at 100, n. 21, 103 S.Ct. at 2901, n. 21; *see Rehabilitation Institute v. Group Administrators, Ltd.,* 844 F.Supp. 1275, 1279 (N.D.Ill.1994). In *Pohl,* the Seventh Circuit stated that "ERISA's preemption provision is very broad, but the word 'related' must not be taken literally." 956 F.2d at 128 (hypothesizing that if "Mrs. Pohl [had] gone to the NBC office to inquire about coverage and while there had slipped on a banana peel and been injured and brought a negligence suit, ... we would not expect NBC to remove the case to federal court and argue preemption") (citation omitted).

In *Decatur Memorial Hospital v. Conn. Gen. Life Ins. Co.,* 990 F.2d 925 (7th Cir. 1993), the Seventh Circuit considered a case similar to ours. There, the Hospital provided medical services to a patient after insurance Company A wrongly informed the Hospital that it still covered the patient and approved the services. Eventually, the Hospital billed insurance Company B, the correct one, for the services, but company B paid only half of the patient's bill, "penalizing the Hospital for neglecting to obtain approval of the services in advance." *Id.* at 926. The Hospital sued Company A in state court for negligent misrepresentation to collect the other half. Company A petitioned to remove the case to federal court, arguing that ERISA preempted the Hospital's state law claim. The district court granted company A's petition, agreeing that ERISA preempted the Hospital's claim. The Hospital appealed. On appeal, however, the Seventh Circuit did not decide the preemption issue. It did not need to decide "because even if the Hospital's status as a provider of medical care enables it to escape the limitations on claims under ERISA—that is, even if a claim under state law escapes the broad preemption clause in ERISA ...—the provider still needs a theory of recovery valid under state law," and the provider did not have one. *Id.* at 927. Although the court did not decide the preemption issue, it discussed the "cogent arguments on both sides."

The Hospital argued that ERISA was inapplicable because the Hospital "is a provider of medical care rather than a beneficiary under the ERISA plan. It is not a party to, and thus not bound by, limitations in the plan." *Id.* Yet the court responded that ERISA may be applicable for two reasons. First, "the resources to pay the judgment must come ultimately from the ERISA plan." *Id.* Second, "to the extent that the Hospital demands 'coverage', ... it steps into the shoes of the beneficiary to whom it provided care. An assignee cannot have greater rights than the assignor possessed." *Id.* "An assignee of benefits under an ERISA plan becomes a statutory 'beneficiary' and thus may use [ERISA] to collect; with this designation comes all limitations on beneficiaries' entitlement." *Id.* (citation omitted).

Next, Company A argued that ERISA was applicable. Yet the court responded that

ERISA may be inapplicable for two reasons. First, "cases holding that misrepresentations by the plan's administrator or insurer do not permit departures from the plan may establish only that the written word prevails over inconsistent oral declarations." *Id.* "A third-party provider of medical care, by contrast, may lack access to the written plan. Medical providers that cannot rely on carriers' oral representations of coverage may decline to furnish care or raise their prices as a hedge against nonpayment." *Id.* Second, "permitting physicians, hospitals, and other providers to collect for services rendered in reliance on oral misrepresentations could fulfil the written terms of plans." *Id.*

In this case, as in *Decatur,* a third-party (Goldberg) brings a state law claim (tortious interference with contract) to recover an ERISA plan beneficiary's (LoManto's) insurance (life) benefits from the institutions (Prudential and Sun) that supposedly provided incorrect information (assignment approval) about the beneficiary's coverage (assignment rights).

To resolve this case, the *Decatur* court's discussion guides us. First, the court's response to the Hospital is forceful. The resources that Prudential and Sun would use to pay the judgment would come from the Plan. *See Cromwell v. Equicor–Equitable HCA Corp.,* 944 F.2d 1272 (6th Cir.1991), *cert. denied,* — U.S. —, 113 S.Ct. 2, 120 L.Ed.2d 931 (1992) (stating that such payments would "affect the relationship between plan principals by extending coverage beyond the terms of the plan").[2] Moreover, to the extent that Goldberg demands payment as LoManto's assignee, his rights are limited to LoManto's, whose rights excluded the ability

to assign his benefits for value.[3] *See* Plan § 12.10.

Second, the *Decatur* court's response to Company A is not forceful. Goldberg had access to LoManto's written plan. He purchased LoManto's benefits with calculation, not impulse, and he should bear the burden to calculate correctly. *Cf. Memorial Hospital Sys. v. Northbrook Life Ins. Co.,* 904 F.2d 236, 246 (5th Cir.1990) (discussing the different "commercial realities" of health care providers). Moreover, allowing Goldberg to collect for his services in reliance on Prudential and Sun's supposed misrepresentations would not fulfil the written terms. *See* Plan § 12.10.

Beyond the *Decatur* court's discussion, two factors guide us. First, in this case, unlike in *Decatur* and other hospital cases, the third-party, not the plan, caused the supposed misrepresentation. Goldberg mailed to Prudential and Sun a form implying that LoManto intended to make a gift. When Goldberg mailed the form, however, he knew that LoManto intended to make an assignment for value. Did Goldberg know that the plan allowed gifts but not assignments for value? Almost certainly, but it does not matter. His misrepresentation to Prudential and Sun prompted their supposed misrepresentation to him. In this case, then, the equities are reversed. *Cf. Hospice of Metro Denver v. Group Health Ins.,* 944 F.2d 752 (10th Cir. 1991) (arguing promissory estoppel); *Memorial Hospital Sys.,* 904 F.2d at 238 (arguing equitable estoppel); *Rehabilitation Institute,* 844 F.Supp. at 1278 (arguing equitable estoppel).

2. The *Parkside Lutheran Hospital v. Zeltner & Assocs., Inc.,* 788 F.Supp. 1002 (N.D.Ill.1992) court declined to follow the *Cromwell* court on this point. *Id.* at 1006. The *Parkside* court, however, offered a general principle that, "in an action for misrepresentation, the claim's relation to the plan depends on the nature of the representation: if it was merely involving a verification of coverage and, quite apart from the policy itself, created a duty between insurer and provider, the plan is not involved and the action does not 'relate to' the plan; however, if the conversations concerned the nature of the coverage under the plan—e.g., whether an illness was a pre-existing condition or whether a given procedure was covered under the policy—they do 'relate to'

the plan for ERISA preemption purposes." *Id.* at 1007. In this case, Prudential and Sun made a representation that concerned LoManto's coverage, or rights, under the plan. Apparently, if the *Parkside* court confronted the facts in this case, it would have followed the *Cromwell* court. *But see Rehabilitation Institute,* 844 F.Supp. at 1277–78 and 1281.

3. In *Decatur* and other hospital case, courts focus on the hospitals' rights as assignees, not implied contractors. Similarly, we focus on Goldberg's rights as an assignee, not as an explicit contractor.

Second, in this case, unlike in *Decatur* and other hospital cases, the third-party does not implicate the same policy concerns. We do not belittle Goldberg's services; no doubt they are valuable and worthwhile. Yet we recognize that, compared to a hospital's services, Goldberg's are derivative. *Cf. Hospice of Metro Denver*, 944 F.2d at 754–55; *Memorial Hospital Sys.*, 904 F.2d at 246. Therefore, we hold that ERISA preempts Goldberg's state law claim.

### B.   Jurisdiction

 Next, we inquire whether we have subject matter jurisdiction over this case. In *Kennedy v. Conn. Gen. Life Ins. Co.*, 924 F.2d 698 (7th Cir.1991), the court announced that we have jurisdiction when a third-party sues for benefits as a participant's assignee, if the third-party's claim is colorable. *Id.* at 700.[4] "[S]ubject-matter jurisdiction depends on an arguable claim, not on success." *Id.* "Only if the language of the plan is so clear that any claim as an assignee must be frivolous is jurisdiction lacking." *Id.* For the purposes of our inquiry into whether we have jurisdiction, we may, of course, look beyond the pleadings to the language of the plan. *See Id.; Parkside Lutheran Hospital v. R.J. Zeltner & Assocs., Inc.*, 788 F.Supp. 1002, 1004 (N.D.Ill.1992).

> In this case, the Plan provides:
> Except as may otherwise be required by law, or as otherwise specifically provided in the Plan or in an Insurance Contract, no amount payable at any time under the Plan and the Fund shall be subject in any manner to alienation by anticipation, sale, transfer, assignment, bankruptcy, pledge, attachment, charge or encumbrance of any kind, nor in any manner be subject to the debts or liabilities of any person, and any attempt to so alienate or subject any such amount, whether presently or thereafter payable, shall be void.

Sun's Br. at 3. The Plan's reference to an "Insurance Contract" is to LoManto's insurance policy, which provides that "[i]nsurance under a coverage is not assignable unless the

Coverage Schedule indicates that it is assignable." *Id.* at 4. In turn, the Coverage Schedule provides that "[t]he insurance is assignable only as a gift assignment." *Id.*

The language of the Plan is clear; it allows only gift assignments. In fact, it is so clear that any claim Goldberg might bring would be frivolous. *Parkside*, 788 F.Supp. at 1004. Therefore, we lack subject matter jurisdiction.

### III.   Conclusion

For the reasons discussed above, we grant Prudential's and Sun's motions to dismiss, with prejudice.

---

**4.** We could dismiss Goldberg's claim without prejudice and grant him leave to replead. If, however, he repled with a frivolous claim, the dismissal without prejudice would be unproductive. So, if we decide that his repleading would be frivolous, we will dismiss with prejudice.