# In the
# United States Court of Appeals
## For the Seventh Circuit

———————

No. 04-4317

DANIEL BROSTED,

*Plaintiff-Appellant,*

v.

UNUM LIFE INSURANCE COMPANY OF AMERICA and
DREISILKER ELECTRIC MOTORS, INC. GROUP LONG TERM
DISABILITY INCOME PLAN,

*Defendants-Appellees.*

———————

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 03 C 5423—**Elaine E. Bucklo**, *Judge.*

———————

ARGUED JUNE 9, 2005—DECIDED AUGUST 26, 2005

———————

Before BAUER, RIPPLE, and MANION, *Circuit Judges.*

MANION, *Circuit Judge.* Daniel Brosted sued Unum Life Insurance Company and the Dreisilker Electric Motors, Inc. Long Term Disability Income Plan under the Employment Retirement Income Security Act, 29 U.S.C. §§ 1001 *et seq.* (ERISA), alleging the defendants violated their fiduciary duties by misstating the amount of benefits to which he was entitled under the Plan. Brosted also alleged an equitable estoppel claim premised on the misstatement of benefits. The district court granted the defendants summary judgment. Brosted appeals. We affirm.

## I.

Daniel Brosted began working for Dreisilker Electric Motors, Inc. ("Dreisilker") in 1974. In the early 1980s, Brosted was diagnosed with multiple sclerosis. He nonetheless was able to continue working at Dreisilker as a purchasing manager until late 1999, when he was hospitalized for complications related to multiple sclerosis. In February 2000, after leaving the hospital, Brosted received a written return-to-work release from his physician. When, in the spring of 2000, Brosted attempted to return to his job, Dreisilker refused to allow him back. After considering filing a disability discrimination suit against Dreisilker, Brosted instead decided to negotiate with Dreisilker to work out a solution.

While negotiating with Dreisilker, Brosted also applied for disability benefits from the Long Term Disability Plan ("Plan") which Dreisilker sponsored, listing his first day of hospitalization, December 29, 1999, as the last day he worked before his disability. The Plan provided coverage for long-term disability income to its participants funded through the purchase of insurance from Unum Life Insurance Company of America, Inc. ("Unum").

The Unum policy[1] provided that a person is disabled when Unum determines that the employee is "limited from performing the material and substantial duties of [his] regular occupation due to sickness or injury" and has "a

---

[1] The parties in this case cite to what appear to be the terms of the insurance policy, as opposed to the Plan. Brosted does not claim that the Plan provided broader coverage than the insurance policy used to fund the Plan. Accordingly, we treat the terms of the insurance policy as mirroring the Plan's terms and cite those terms throughout.

20% or more loss in [his] indexed monthly earnings due to the same sickness or injury." The policy further provided that if a person is disabled, as defined by the policy, Unum will calculate the monthly disability benefits by: multiplying the claimant's monthly earnings by 60% (capped at $6,000) and subtracting any deductible sources of income, such as social security benefits. The Policy further defined "monthly earnings" to mean the claimants'

> gross monthly income from your Employer in effect just prior to your date of disability. It includes your total income before taxes, but does not include deductions made for pre-tax contributions to a qualified deferred compensation plan, Section 125 plan, or flexible spending account.

After applying for benefits from Unum, Brosted spoke with a Unum representative, Molly Neylan, regarding the amount of benefits for which he qualified. Neylan informed Brosted that he would receive 60% of his monthly earnings as benefits, provided he met the policy definition of disability. Neylan further informed Brosted that he would shortly receive a confirmation of the exact dollar amount of his monthly benefits. On July 27, 2000, Brosted received the promised letter, in which Neylan wrote: "This plan provides you with 60% of your basic monthly earnings reduced by certain other income benefits such as Social Security, Workers' Compensation and Pension. Please refer to the monthly benefit reductions in your certificate of insurance for full details." Brosted also received from Unum a check for $2,596 with an "Explanation of Long Term Disability Benefits" that listed the amount of net benefits as "$3,016.00." (Brosted opted to have the Plan withhold taxes from the disability check, and $2,596 was the after-tax benefits total.)

After receiving this letter, on August 1, 2000, Brosted entered into a release and severance agreement with Dreisilker. This agreement expressly provided as a condition precedent that Unum must deem Brosted disabled and he must secure long-term disability benefits under the Plan. Unfortunately for Brosted, while he was executing the release and severance agreement, a Certified Public Accountant working for Unum reviewed the disability benefits calculations for Brosted, and discovered that the previous benefits calculation was incorrect. After properly calculating Brosted's benefits, the CPA determined that he would receive only $2,082.37 per month, $513.63 less than originally stated. Apparently, the mistake occurred because Unum's original calculation was based on Brosted's basic monthly wages of $5,026.66, whereas under the policy terms, that amount should have been reduced by the amounts Brosted contributed to his 401(k) plan and section 125 flexible spending account, $790.20 and $102.05 respectively.

On August 16, 2000, Unum informed Brosted of its error in calculating his monthly disability benefits, notifying him that the $513.63 overpayment would be deducted from his second disability check, and that thereafter he would receive the correct after-tax amount of $2,082.37. Brosted appealed Unum's determination of his monthly disability benefits through the Plan appeal process. On January 16, 2002, Unum notified Brosted of its decision to uphold its benefits determination.

After losing his appeal, Brosted filed suit against Unum Life Insurance and the Plan, under ERISA, alleging, in count one, a claim of equitable estoppel and, in count two, breach of fiduciary duty. Following discovery, the district court granted the defendants summary judgment. Brosted appeals.

## II.

On appeal, Brosted argues that the district court erred in granting the defendants summary judgment on his equitable estoppel and breach of fiduciary duty claims. Brosted also argues that the district court abused its discretion in denying his motion for an extension of time for discovery.

### A.  Motion for an Extension of Time

We consider first Brosted's claim that the district court abused its discretion in denying his motion for an extension of time for discovery. The district court originally set a discovery deadline of March 31, 2004. Brosted requested an eight-week extension, which the district court granted, establishing a new deadline of May 31, 2004. During late February and early March, Brosted initiated discovery requests, seeking the production of documents and noticing depositions for three individuals—two representatives of Unum and a Vice President of Dreisilker. On April 7, 2004, the defendants filed a motion for a protective order, seeking to limit discovery to the administrative record developed during Brosted's appeal of the benefits determination through the Plan appeal process. This effectively put the discovery on hold because the district court did not rule on the defendants' motion until July 1, 2005, at which time the district court denied the defendants' motion for a protective order. That same day, and apparently before the district court entered its order on the protective order motion, Brosted filed a motion to enlarge the discovery deadline.[2]

---

[2]  Brosted's motion to enlarge time is file stamped July 1, 2004, and notes that "the Motion to Bar Discovery is still pending." The district court's Minute Order denying the defendants' motion for

(continued...)

On July 12, 2004, the district court denied as moot Brosted's motion to enlarge time and reset discovery.

On appeal, Brosted claims that the district court erred in denying his motion for an extension of time as moot because he still needed to depose three witnesses. Brosted further asserts that he needed to wait until the district court ruled on the protective order before proceeding with these depositions, and that the district court should have, therefore, granted him an extension of time to complete discovery.

This court reviews the district court's decision to deny an extension of time to conduct discovery for an abuse of discretion. *See, e.g., Campania Management Co., Inc. v. Rooks, Pitts & Poust*, 290 F.3d 843, 850-51 (7th Cir. 2002) (holding that the district court did not abuse its discretion in denying a motion to extend discovery filed nine days after the close of discovery). In this case, in his motion Brosted sought an extension of time in order to obtain responses from the defendants to "discovery previously requested." Prior to ruling on that motion, the district court denied the defendants' request for a protective order. Without a protective order prohibiting discovery, the defendants were forced to respond to the discovery requests that Brosted had filed before the discovery deadline. This, as the district court recognized, made the request for an extension of time to obtain responses for discovery previously requested moot.

However, Brosted's attorney failed to take the depositions of the three witnesses before the discovery deadline, instead writing to the defendants' attorney, stating that those

---

[2] (...continued)
a protective order is stamped filed, July 1, 2004, 4:09 p.m., and the order is stamped as docketed July 2, 2004.

depositions were continued. On appeal, Brosted justifies this failure by arguing that he needed access to the documents being withheld before he could depose the three witnesses. That may well be true. Perhaps when Brosted belatedly requested an extension of time for discovery, had he argued that he needed additional time to depose the witnesses because he had yet to receive the documents, the court might have granted his request. But the primary problem with his motion is that he did not seek an extension until a month after the discovery deadline had passed. Thus, pursuant to Fed. R. Civ. P. 6(b)(2), Brosted was required to show excusable neglect for failing to comply with the discovery deadline.[3] But in seeking an extension of time, Brosted did not argue that excusable neglect existed, nor did he claim that he could not have deposed those witnesses within the discovery time period because of the pending motion for the protective order. On appeal, Brosted also fails to argue that he satisfied the excusable neglect standard established by Rule 6(b). Given that Brosted had already received one extension, waited until one month after the extended discovery deadline expired to file a motion to

---

[3] Fed. R. Civ. P. 6(b) provides: "When by these rules or by a notice given thereunder or by order of court an act is required or allowed to be done at or within a specified time, the court for cause shown may at any time in its discretion (1) with or without motion or notice order the period enlarged if request therefor is made before the expiration of the period originally prescribed or as extended by a previous order, or (2) upon motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect; but it may not extend the time for taking any action under Rules 50(b) and (c)(2), 52(b), 59(b), (d) and (e), and 60(b), except to the extent and under the conditions stated in them."

further extend the deadline, and failed to claim excusable neglect for missing the deadline, we conclude that the district court did not abuse its discretion in denying the request. *Campania Management*, 290 F.3d at 850.

## B.  Equitable Estoppel

As to the merits of Brosted's claims, he first contends that the district court erred in granting the defendants summary judgment on his equitable estoppel claim. In support of his claim, Brosted asserts that he detrimentally relied on Unum's misrepresentation of the amount of his disability benefits. Based on the amount stated in the July 27, 2001, letter, he entered into a release and severance with Dreisilker. Brosted maintains that had he known that he would have been entitled to only $2,082.37 under the Plan, he would not have executed the release. Instead, Brosted claims, he would have demanded that Dreisilker accommodate his disability and allow him to return to work. Brosted explains that once he returned to Dreisilker with such an accommodation, he would have stopped contributing to the 401(k) and 125 spending plans, so as to increase the salary base for purposes of the disability plan. Then, after four months—the time period the Plan used to calculate the salary base for benefits determinations—he could claim disability and leave Dreisilker and obtain higher benefits under the Plan.

The district court rejected Brosted's theory of equitable estoppel, concluding that because Brosted claimed that he was disabled when he applied for benefits under the Plan, he could not reverse himself and present a theory during litigation premised on his ability to return to work at Dreisilker. As the district court noted, he could not have reasonably relied upon the July 27 letter because he "filed

his employee statement in connection with his application for disability benefits on July 17, 2000, stating that he had been disabled since December 30, 1999."[4]

Brosted counters by arguing that even if he were disabled for purposes of the Plan, there was still a factual dispute as to whether he could still do his job at Dreisilker with a reasonable accommodation. However, even if true,[5] Brosted's claim still fails because to prevail on an equitable estoppel claim, among other things, Brosted must establish a knowing misrepresentation by the defendant. *Coker v. Trans World Airlines, Inc.,* 165 F.3d 579, 585 (7th Cir. 1999). *See also Decatur Memorial Hosp. v. Connecticut Gen. Life Ins. Co.,* 990 F.2d 925, 926-27 (7th Cir. 1993) (stating that "[a]rguments that negligent misrepresentations 'estop' sponsors or administrators from enforcing the plans' written terms have been singularly unsuccessful"). Here, Brosted failed to present any evidence that the defendants made a knowing misrepresentation as to the amount of benefits he would receive under the Plan. Therefore, he cannot succeed on his equitable estoppel claim, and the district court properly granted the defendants summary judgment on this claim.

## C. Breach of Fiduciary Duty

In Count II, Brosted presented a breach of fiduciary duty claim under § 502(a)(3) of ERISA. 29 U.S.C. § 1132(a)(3). To

---

[4] The application form in the record appears to list December 29, 1999, as the date of disability, although the writing is difficult to decipher, which may explain the district court's reference to December 30, 1999.

[5] Dreisilker's human resource manager concluded that Brosted's employment position could not be modified to accommodate Brosted's disability.

state a claim for breach of fiduciary duty under ERISA, the plaintiff must establish: (1) that the defendants are plan fiduciaries; (2) that the defendants breached their fiduciary duties; and (3) that the breach caused harm to the plaintiff. *Kamler v. H/N Telecomm. Serv., Inc.*, 305 F.3d 672, 681 (7th Cir. 2002).

Without considering whether Brosted presented sufficient evidence of these elements to support his breach of fiduciary duty claim, the district court instead granted the defendants summary judgment on the basis that Brosted could not sue for breach of fiduciary duty because his claim was really one for the denial of benefits under § 502(a)(1)(B) of ERISA. 29 U.S.C. § 1132(a)(1)(B). The district court further held that Brosted was seeking monetary damages and not equitable relief, and therefore could not recover under § 502(a)(3) for breach of fiduciary duty. Brosted argues in response that he did not seek damages under the terms of the Plan, pursuant to § 502(a)(1)(B). Rather, Brosted maintains that he is pursuing a separate and distinct legal cause of action under § 502(a)(3) for breach of fiduciary duty, and that he is seeking the equitable remedy of restitution, which is available under § 502(a)(3). 29 U.S.C. § 1132(a)(3).

In support of his position, Brosted cites *Bowerman v. Walmart Stores, Inc.*, 226 F.3d 574 (7th Cir. 2000). In *Bowerman*, the plaintiff had been denied medical coverage for her pregnancy because of a short lapse in her employment with the defendant. *Id.* at 577. The lapse occurred because the Plan documents failed to adequately explain the relationship between COBRA coverage and regular coverage. *Id.* at 590-91. Also, the defendant improperly explained to Bowerman the role of interim coverage to ensure continuity of coverage. *Id.* Bowerman sued for breach of fiduciary duty under § 502(a)(3) of ERISA. *Id.* After explaining that § 502(a)(3) allowed for only equitable remedies and not

money damages, this court held:

> In this case, we see no reason why that remedy cannot take the same form as the remedy fashioned by the district court with respect to the equitable estoppel claim. Ms. Bowerman ought to have an opportunity to tender the COBRA payment that would have been paid if the Plan had lived up to its obligation to inform her fully of the operation of the Plan. If she makes that payment, the Plan then must pay the maternity-related medical expenses that it has refused to pay in reliance on the pre-existing condition limitation.

*Id.* at 592.

The defendants maintain that Brosted's reliance on *Bowerman* is misplaced, arguing that, unlike the plaintiff in *Bowerman*, who sought equitable relief in the form of retroactive reinstatement of the plan, the remedy that Brosted seeks is purely monetary. However, as we noted in *Health Cost Controls v. Skinner*, 44 F.3d 535, 537 n.5 (7th Cir. 1995), "[r]estitution may be in the form of monetary relief. Thus, although [the plaintiff] clearly cannot recover compensatory damages under section 502(a)(3), if it successfully makes out a claim for restitution, admittedly an equitable action, it may be entitled to monetary relief."

We need not wade into this morass, however, because the facts, read in the light most favorable to Brosted, fail as a matter of law to establish that the defendants breached their fiduciary duty. The evidence presented to the district court at the summary judgment phase merely established that an employee of Unum miscalculated and overstated the amount of benefits which Brosted would receive under the Plan. There was no evidence that the defendants intentionally misrepresented the amount of benefits due Brosted. This is significant, because, as Brosted acknowledges in his

brief, this court held in *Vallone v. CNA Financial Corp.*, 375 F.3d 623, 642 (7th Cir. 2004), that a breach of fiduciary duty claim premised on a misstatement requires an intent to deceive. Specifically, in *Vallone* this court held "while there is a duty to provide accurate information under ERISA, negligence in fulfilling that duty is not actionable." *Id.* That is because ERISA allows a plan fiduciary to "rely on information, data, statistics or analyses furnished by persons performing ministerial functions for the plan, provided that he has exercised prudence in the selection and retention of such persons." 29 C.F.R. § 2509.75-8. Thus, in *Schmidt v. Sheet Metal Workers' Nat. Pension Fund*, 128 F.3d 541 (7th Cir. 1997), this court rejected a breach of fiduciary duty claim premised on a misstatement made by a clerical employee of the Plan, noting: "There is no evidence that the Trustees in this case were involved in any way with [the] misstatement. Nor has [the plaintiff] attempted to show that the Trustees failed to exercise due care either in hiring or retaining [the person making the misstatement] or in training her to respond to inquiries from plan participants." *Id.* at 548. The *Schmidt* court then concluded: "We therefore agree with the district court that [the] misstatements would not in these circumstances support a breach of fiduciary duty claim against the Trustees." *Id.* at 548.

Alternatively, Brosted argues that the defendants breached their fiduciary duty by overcharging Dreisilker. Some additional facts are necessary to understand this theory. During discovery, Brosted learned that Dreisilker had been paying Unum premiums to fund the insurance policy based upon a percentage of its employees' monthly base wages, without deducting 401(k) contributions. However, the insurance policy Unum issued provided benefits based on the employee's wage reduced by deferred compensation (such as 401(k)) contributions. Unum admit-

ted in a February 6, 2002, letter to Dreisilker that the premiums charged had been incorrectly calculated and that Dreisilker had overpaid. The letter maintained, though, that the Plan terms would control, and that Dreisilker could either request the elimination of the deferred compensation term from the Plan, or arrange for the premiums to be recalculated, prospectively. Unum did not offer to reimburse Dreisilker for the past overpayments, and there is nothing in the record to indicate how Dreisilker and Unum resolved this problem.

After learning that Unum had overcharged Dreisilker for premiums on the Plan, in opposing Unum's motion for summary judgment, Brosted argued to the district court that Unum had been unjustly enriched and that therefore, he was entitled to benefits based on the premiums paid, namely benefits unreduced by the 401(k) and 125 flexible spending plan contributions. The district court rejected Brosted's theory, concluding that Brosted was improperly seeking to amend the complaint at the summary judgment stage.

Brosted challenges the district court's reasoning on appeal, contending that his unjust enrichment argument was not a separate claim, but rather supported his breach of fiduciary duty claim, which he had alleged in his complaint. Alternatively, Brosted argues that the district court should have allowed him to amend his complaint to allege an unjust enrichment claim since he did not learn of Unum's overcharging until right before the deadline for filing summary judgment motions. However, even if Brosted properly presented this theory to the district court, he cannot succeed on this claim because Dreisilker paid 100% of the premiums and did not require any out-of-pocket contribution by Brosted. Thus, Unum's overcharging of premiums did not impact Brosted, as Brosted paid nothing,

and he received exactly the benefits specified in the Plan. This proves fatal because to recover on a breach of fiduciary duty claim, the plaintiff must establish the alleged breach caused the plaintiff an injury. *Kamler*, 305 F.3d at 681. However, any injury here was to Dreisilker, not Brosted. Therefore, on the merits, Brosted loses, and, since we can affirm on any basis in the record, *Sherrod v. Lingle*, 223 F.3d 605, 614 (7th Cir. 2000), we need not delve into the question of whether Brosted improperly presented a separate claim or merely asserted an alternative factual theory based on the claim alleged in his complaint.

## III.

Unum's representative made a mistake when she calculated the amount of benefits due Brosted under the Plan. However, because there is no evidence that this mistake was anything other than an inadvertent error, Brosted cannot succeed on an equitable estoppel or breach of fiduciary duty claim. Brosted is also not entitled to recover from the defendants based on Unum's overcharging of premiums since his employer paid the premiums in their entirety. Finally, the district court did not abuse its discretion in denying Brosted's request for an extension of the discovery deadline because Brosted waited until the deadline had already passed to make the request. For these and the foregoing reasons, we AFFIRM.

No. 04-4317                                                        15

A true Copy:

    Teste:

                                 _____
                                   *Clerk of the United States Court of Appeals for the Seventh Circuit*