# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

June 24, 2021

Lyle W. Cayce
Clerk

No. 20-30059

Terry Clark,

*Plaintiff—Appellant*,

*versus*

CertainTeed Salaried Pension Plan; Saint-Gobain
Corporation Benefits Committee,

*Defendants—Appellees*.

---

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 2:18-CV-231

---

Before Barksdale, Elrod, and Ho, *Circuit Judges*.

Per Curiam:*

Plaintiff Terry Clark appeals the entry of summary judgment on his claims under the Employee Retirement Income Security Act (ERISA) against Defendants CertainTeed Salaried Pension Plan and Saint-Gobain Corporation Benefits Committee. We affirm.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

**I.**

The Saint-Gobain Retirement Income Plan (SGRI Plan) is an ERISA-qualified plan that provides retirement benefits for employees of the Saint-Gobain Corporation and affiliated entities. One sub-plan (appendix) to the SGRI Plan is the CertainTeed Corporation Salaried Employee's Pension Plan (CertainTeed Plan). Participation in the CertainTeed Plan is generally limited to those who were employees of CertainTeed or select affiliates prior to January 1, 2001.

Clark began working for GS Roofing Products Company, Inc. (GS Roofing), in 1989. Ten years later, GS Roofing was acquired by Bird Corporation, a company that—like CertainTeed—was part of a Saint-Gobain-controlled group of corporations. In 2007, Clark transferred to a position with CertainTeed.

From the time that the Saint-Gobain-affiliated Bird Corporation acquired GS Roofing, Clark's paystubs reflected a "1-A Code." The parties disagree on the meaning of this code. Clark contends that the code "indicat[ed] that he and/or his employer made contributions to and that he was a participant in the CertainTeed . . . Plan." Defendants assert that it was simply an "actuarial code reflecting the location at which Clark [was] employed" and that it did not "by itself" designate "the defined benefit plan in which Clark participate[d]." Regardless, it was not until 2015 that Clark requested and received two separate benefit-estimate statements from the Saint-Gobain Pension Administration Team. Each statement assumed Clark was a participant in the CertainTeed Plan but contained the disclaimer that it was "only an estimate" and "not a guarantee of benefits."

In 2017, Saint-Gobain's pension administrator, the North American Defined Benefits Administration (NADBA), informed Clark that a "coding error" had placed him in the incorrect plan and that he was actually a

participant in the Saint-Gobain Retired Accumulation Plan. Clark "appealed" what he perceived to be a denial of retirement benefits, citing his paystub code and benefit-estimate statements as evidence of his participation in the CertainTeed Plan. NADBA treated Clark's "appeal" as an initial claim for benefits and found that he was ineligible to participate in the CertainTeed Plan because he had not become a CertainTeed employee until 2007. Clark appealed NADBA's decision to the Saint-Gobain Benefits Committee, which denied the claim on the same ground.

Clark sued Defendants in federal district court, invoking § 502(a) of ERISA, which among other things allows civil actions "to recover benefits due . . . under the terms of [a] plan." 29 U.S.C. § 1132(a)(1)(B). Clark alleged that he was entitled to benefits under the terms of the CertainTeed Plan or, alternatively, under an ERISA-estoppel theory. He also sought damages for Defendants' alleged breaches of fiduciary duty and failure to timely produce certain documents.

During litigation, NADBA testified that it had resolved a discrepancy between Clark's pension records and payroll records in favor of the payroll records. It further testified that the Benefits Committee had been notified of the correction to Clark's records during the appeals process. Finally, NADBA testified that the 1-A code corresponded with participation in the CertainTeed Plan only for those individuals who had been employed by CertainTeed before January 1, 2001.

The district court granted Defendants summary judgment on all counts. Clark appeals.

## II.

"We review a district court's grant of summary judgment in ERISA cases *de novo*, applying the same standards as the district court." *Dialysis Newco, Inc. v. Cmty. Health Sys. Grp. Health Plan*, 938 F.3d 246, 250 (5th Cir.

2019). "Summary judgment is appropriate 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Id.* (quoting FED. R. CIV. P. 56(a)).

## A.

We first consider Clark's denied-benefits claim. As an initial matter, we agree with Defendants that the district court erred in conducting de novo review of the Benefits Committee's interpretation of the CertainTeed Plan. An administrator's denial of benefits under an ERISA-governed plan is reviewed for abuse of discretion if "the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). Because § 8.8(a) of the SGRI Plan expressly gives the Benefits Committee "such duties and powers as may be necessary . . . [t]o construe and interpret the [SGRI] Plan" and "decide all questions of eligibility and determine the amount, manner and time of payment of any benefits," and the CertainTeed Plan is a component of the SGRI Plan, the Benefits Committee was entitled to abuse-of-discretion review on its interpretation of the CertainTeed Plan.

The district court reached the correct result anyway. The CertainTeed Plan clearly provides that "an individual who becomes an Employee on or after January 1, 2001 shall not be eligible to become a Participant." Exceptions are made only for those who, among other things, (1) were participants in the plan prior to January 1, 2001; or (2) ceased to be active participants due to transfer or termination. Individuals qualify as "employees" by working for either CertainTeed or a CertainTeed affiliate that "adopts t[he] Plan with the consent of the Board of Directors." "Affiliate" is defined broadly as "any employer which is included as a member with the Company in a controlled group of corporations."

No. 20-30059

Clark asserts that he has been a qualifying employee and participant in the CertainTeed Plan since 2000—i.e., once he worked for GS Roofing long enough following its acquisition by Bird Corporation. He thus assumes that GS Roofing became a qualifying "affiliate" once Saint-Gobain acquired GS Roofing in 1999. But it is undisputed that neither of the entities for which Clark worked—GS Roofing or Bird Corporation—ever "adopt[ed]" the CertainTeed Plan "with the Consent of the Board of Directors." And Clark did not begin working for CertainTeed proper until 2007—"after January 1, 2001."

Accordingly, Clark is ineligible for benefits under the plain terms of the CertainTeed Plan. The district court was therefore correct to enter summary judgment on his denied-benefits claim.

**B.**

Clark also asserts that the district court failed to consider whether he is entitled to benefits due to Defendants' failure to provide him a "reasonable opportunity" for a "full and fair review" under § 503 of ERISA. 29 U.S.C. § 1133(2). Specifically, he argues that the district court should have considered Defendants' "blatant manipulation" of records to "fit the narrative that he was not a 'participant'" and "arbitrar[y]" failure to decide his appeal within sixty days.

Reviewing this claim de novo, we disagree. Even assuming that Saint-Gobain's third-party administrator acted improperly in listing Clark as a participant in its internal database and "unilaterally" removing him in response to his inquiries, no amount of review can change the fact that Clark is ineligible for benefits under the plain terms of the CertainTeed Plan. In other words, remanding Clark's benefits claim here would be a "useless formality." *See Lafleur v. La. Health Serv. & Indem. Co.*, 563 F.3d 148, 157, 158 n.22 (5th Cir. 2009) (explaining that while "[r]emand to the plan

No. 20-30059

administrator for full and fair review is usually the appropriate remedy when the administrator fails to substantially comply with the procedural requirements of ERISA," *id.* at 157, a court might decline to remand if "that remand would be a useless formality" because "much, if not all, the objective [] evidence supports the conclusion that [the] plaintiff [is not covered under the terms of the policy]," *id.* at 158 n.22 (alterations in original) (quoting *Kent v. United of Omaha Life Ins. Co.*, 96 F.3d 803, 807 (6th Cir. 1996))). We therefore decline to remand on this ground.

## C.

We turn next to Clark's ERISA-estoppel claim, which we review de novo. "To establish an ERISA-estoppel claim, the plaintiff must establish: (1) a material misrepresentation; (2) reasonable and detrimental reliance upon the representation; and (3) extraordinary circumstances." *Mello v. Sara Lee Corp.*, 431 F.3d 440, 444–45 (5th Cir. 2005).

At a minimum, Clark fails to illuminate a genuine dispute about detrimental reliance. Indeed, Clark has not even properly articulated reliance. The most he has said on this point is that he "believed he was a participant" in the CertainTeed Plan and that "[D]efendants' actions left [him] without a viable retirement . . . he had been relying on and planning for."

Such conclusory statements are insufficient to survive summary judgment. "[A] party opposing a properly supported motion for summary judgment may not rest upon . . . mere allegations . . . but . . . must set forth *specific facts* showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (emphasis added) (internal quotation marks omitted). *See also Shook v. Avaya, Inc.*, 625 F.3d 69, 73 (3rd Cir. 2010) ("In demonstrating sufficient reliance, the plaintiff must have

No. 20-30059

taken some action as a result of the misrepresentation; the mere expectation of a continued benefit is not enough.").

To be sure, we can *imagine* ways in which Clark might have detrimentally relied on Defendants' misrepresentations. Perhaps Clark would have left CertainTeed, but stayed in order to receive benefits from the CertainTeed Plan. Or maybe he decided to pass up the opportunity to participate in another retirement investment. But Clark has failed to so much as articulate these positions. And it is not our job to speculate or litigate on behalf of a party. Once again, then, summary judgment was appropriate.[1]

**D.**

We now turn to Clark's claim that Defendants breached fiduciary duties in "failing to provide him accurate information and materials" and making the "unilateral decision . . . that he was no longer eligible for benefits despite decades of representations that he was a 'participant.'" The district court rejected Clark's claim on the ground that ERISA does not create a private right of action for individual relief for breach of fiduciary duty. In so doing, it invoked *Massachusetts Mutual Life Insurance Co. v. Russell*, 473 U.S. 134 (1985).

Clark argues that the district court erred in relying on *Russell* because that case foreclosed only claims for extracontractual damages under

---

[1] In his "Statement of the Case," Clark does allege that Defendants sent him "vesting statements" "indicating" that he "and/or his employer" made contributions to the CertainTeed Plan. But arguments mentioned in passing without further development are inadequately briefed. *See United States v. Stevens*, 487 F.3d 232, 242 n.1 (5th Cir. 2007). Moreover, Clark's record cites on this point are inadequate. In the end, Clark does not point to any actual evidence that he and/or his employer made contributions on his behalf. And that is insufficient. *See, e.g., United States v. Rojas*, 812 F.3d 382, 407 n.15 (5th Cir. 2016) (noting that a failure to include record citations to support an argument results in the argument being inadequately briefed).

§ 502(a)(2)—and he is seeking damages under ERISA's catch-all provision, § 502(a)(3). Defendants, meanwhile, argue that Clark's fiduciary-duty claim is indistinguishable from his ERISA-estoppel claim, which itself "emanates from ERISA § 502(a)(3)."

There is no doubt that the Supreme Court has cabined *Russell* and endorsed § 502(a)(3) claims for individual relief for breach of fiduciary duty. *See Varity Corp. v. Howe*, 516 U.S. 489, 509 (1996) ("*Russell* discusses § 502(a)'s *second* subsection, not its *third* subsection . . . ."); *id.* at 510 ("[T]he words of [§ 502(a)](3) . . . are broad enough to cover individual relief for breach of a fiduciary obligation."). And this circuit has already allowed a plaintiff to simultaneously bring a breach-of-fiduciary-duty claim under § 502(a)(3) and an ERISA-estoppel claim. *See Geralds v. Entergy Servs., Inc.*, 709 F.3d 448, 450, 453 (5th Cir. 2013) (treating claims for breach of fiduciary duty under § 502(a)(3) and ERISA estoppel as distinct legal claims).

But even assuming that the Pension Administration Team and NADBA were acting as Defendants' agents and ERISA fiduciaries, Clark has failed to articulate how he was injured by their actions. This is fatal. *See id.* at 450 ("The Supreme Court recently . . . expan[ded] . . . the kind of relief available under § 502(a)(3) when . . . the relief . . . makes the plaintiff whole for losses *caused by the defendant's breach* of a fiduciary duty.") (emphasis added); *Brosted v. Unum Life Ins. Co. of Am.*, 421 F.3d 459, 465 (7th Cir. 2005) ("To state a claim for breach of fiduciary duty under ERISA, the plaintiff must establish . . . that the defendants breached their fiduciary duties[] *and* . . . that the breach caused harm to the plaintiff") (emphasis added).

As noted above, Clark is ineligible for benefits under the CertainTeed Plan's plain terms—no records "manipulation," paystub code, or erroneous benefits-estimate caused that. Moreover, Clark has failed to explain how Defendants caused him to detrimentally rely. In sum, Clark has failed to

establish any harm at all resulting from Defendants' alleged breaches. Because Clark's breach-of-fiduciary-duty claim fails as a matter of law, summary judgment was appropriate.

## E.

Finally, we consider Clark's statutory-damages claim de novo. ERISA § 104(b)(4) requires plan administrators to "furnish a copy of the latest updated summary, plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated" "upon written request of any participant or beneficiary." 29 U.S.C. § 1024(b)(4). Certain penalties attach if the documents are not supplied within thirty days of the request. *Id.* § 1132(c). An individual is a "participant" under § 104(b)(4) if he has a "colorable claim" to vested benefits. *Firestone Tire & Rubber Co.*, 489 U.S. at 117–18.

Clark claims that Defendants violated § 104(b)(4) when they failed to timely send the 2015 benefit-estimate statements in response to his request for "copies of all vesting credits" and "account statements." Even assuming that Clark is a participant and that Defendants should have understood this request, *see Fisher v. Metro. Life Ins. Co.*, 895 F.2d 1073, 1077 (5th Cir. 1990) (refusing to award penalties when there was "[n]othing in either the request or the response indicat[ing] that [Defendants] knew or should have known" what the claimant was requesting), the fact remains that these statements are not "other instruments" under § 104(b)(4). *See Murphy v. Verizon Commc'ns, Inc.*, 587 F. App'x 140, 144 (5th Cir. 2014) (unpublished) (agreeing with "the majority of the circuits which have construed [§] 104(b)(4)'s catch-all provision narrowly so as to apply only to formal legal documents that govern a plan," consistent with "the plain meaning of the

term 'instrument'"). Put simply, benefit-estimate statements do not "establish" or "operate" a retirement plan.

The district court excused the Benefits Committee's failure to send the entire SGRI Plan within thirty days of Clark's request for "copies of the summary plan description and plan documents for the CertainTeed . . . Plan," on the ground that the unproduced portions do not govern the CertainTeed Plan. As noted above, unproduced portions of the SGRI Plan *do* govern the CertainTeed Plan (e.g., § 8.8(a) of the SGRI Plan). But we decline to disturb the district court's grant of summary judgment anyway, for the simple reason that Clark has failed to press this point on appeal. *See Cinel v. Connick*, 15 F.3d 1338, 1345 (5th Cir. 1994) ("An appellant abandons all issues not raised and argued in its initial brief on appeal.") (emphasis omitted).

\* \* \*

For the foregoing reasons, the district court was correct to grant Defendants' motion for summary judgment on all counts. We affirm.